## YAWITZ v. HOPKINS et al.

No. 8810—Opinion Filed June 11, 1918.

(174 Pac. 257.)

**1. Guardian and Ward—Guardian's Sale and Reinvestment — Power of County Court—Statute.**

Under section 6569, Rev. Laws 1910, the county court has authority to make an order authorizing the guardian to invest the proceeds of sale and any other of his ward's money in his hands in real estate, but does not clothe the county judge with jurisdiction to make an order authorizing the guardian to contract debts or obligations for the payment of which the ward's estate and he personally are bound.

**2. Guardian and Ward—Mortgage—Jurisdiction of County Judge—Statute.**

Under section 6364, Rev. Laws 1910, the county judge is without jurisdiction to make an order authorizing the guardian to execute a mortgage or other instrument creating a lien upon the property of his ward, except as security for the then existing debts and liabilities for which such estate or any part thereof is then legally liable to be ordered sold.

**3. Judgment—Void Judgment — Collateral Attack.**

A void judgment or order of the trial court may be collaterally attacked.

(Syllabus by Springer, C.)

Error from District Court, McCurtain County; Chas. B. Wilson, Jr., Assigned Judge.

Suit by Frank Yawitz against Wallace G. Hopkins and T. W. Hopkins, as guardian,

and another. Judgment for defendants, and plaintiff brings error. Affirmed.

E. C. Armstrong, for plaintiff in error.

George T. Arnett, guardian ad litem, for minor defendant in error.

Opinion by SPRINGER, C. The parties will be referred to in the order in which they appeared in the court below.

The plaintiff, Frank Yawitz, brought suit in the court below to recover a personal judgment against Wallace Hopkins, a minor, and T. W. Hopkins, his guardian, and Stenson Alemotubbi, on two notes for the sum of $750, and interest, and $75 attorney fees; the two notes being a part of a series of five notes, the other notes not being due, and to foreclose what was termed a vendor's lien.

On June 30, 1913, John W. Scott and wife conveyed to the defendant Wallace Hopkins, a minor, the land involved in this suit, $1,000 of the purchase price being paid in cash, and the balance, $1,872 to be paid in the future, as evidenced by five promissory notes for the sum of $375, each.

In the petition the plaintiff alleges that the notes sued on herein contained a vendor's lien upon the northeast quarter of the northwest quarter of section 13, township 17 south, range 22 east, in McCurtain county, Okla., which the plaintiff requests may be foreclosed. The petition further alleges that the notes in suit here were executed by T. W. Hopkins, guardian of Wallace Hopkins, in favor of John W. Scott, and by John W. Scott, assigned to Stenson Alemotubbi, and by him assigned to C. W. Parker, and by him assigned to this plaintiff.

The propositions presented here involve the authority of the county court to make an order whereby the guardian may mortgage or incumber the real estate of his ward, and also contract debts and execute notes binding the ward personally and his property for the payment of the same. The record in this case discloses that on the 30th day of June, 1913, T. W. Hopkins, as guardian of Wallace Hopkins, filed a petition in the county court of McCurtain county, praying the court that he be allowed to purchase the lands in controversy here, paying therefor the sum of $1,000 in cash and the remainder, of the purchase price, the sum of $1,872.17, to be evidenced by five promissory notes of equal sums. On the day the petition was filed the court made an order authorizing the guardian to purchase the land in controversy, and ordering him to make a cash payment in the sum of $1,000, and ordered him to execute the notes sued on in this case as a part of the balance of the purchase price.

There is nothing in the petition filed by the guardian nor in the order of the court that anywhere shows that Scott held an existing indebtedness against the property of Wallace Hopkins constituting a lien against it, or that he was in any way obligated or liable to Scott for the payment of any sum. In fact the petition and order of the court in this case show the contrary.

As disclosed by the record in this case we are led to the conclusion that T. W. Hopkins, as guardian of Wallace Hopkins, had $1,000 in cash, which he desired to invest in the land in controversy here, and no more, and, after investing all of the funds of his ward that were available, the court ordered him to execute the notes in suit here and to create and establish a vendor's lien for the remainder of the purchase price upon the property purchased. Section 6569, Rev. Laws 1910, provides:

"The county court, on the application of the guardian or any person interested in the estate of any ward, after such notice to persons interested therein as a judge shall direct, may authorize, and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, * * * and the county court may make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require."

Under this provision of the statute the county court has authority to order the guardian to invest the proceeds of sales and any other of his ward's money in his hands in real esate, or in any other manner most to the interest of all concerned.

Section 6556, Rev. Laws 1910, makes provision for the investment of funds in the hands of the guardian that are derived from the sale of a minor's property, which has been made for the purpose of investment, and reads as follows:

"If the property be sold for the purpose of putting out or investing the proceeds, the guardian must make the investment according to his best judgment or in pursuance of any order that may be made by the county court."

Under this section of this statute it would not be necessary for the guardian to procure an order of the court directing him to invest the funds of his ward if they were derived from the sale of property belonging to his

ward, made for the purpose of investment, but the investment of funds belonging to the ward in the hands of the guardian and the execution of a mortgage or vendor's lien upon the real estate belonging to the minor are altogether separate and distinct transactions.

By reference to the provisions of the statute, supra, while authorization is given for the investment of the money of the ward in real estate, there is absolutely no authority whatever for the creation of a debt or obligation in excess of the amount invested. The county judge is without authority to make an order authorizing the guardian to execute a mortgage upon the real estate of his ward, and the guardian is without authority to do so except in instances specifically provided for by statute. Section 6364, Rev. Laws 1910, provides:

"The county judge may, upon petition supported by competent testimony showing that the best interests of the estate demand it, grant authority by order to administrators of intestate estates, and to guardians of the estates of minors or insane persons to mortgage any real estate belonging to such estate: Provided that in no instance shall authority be granted by such judge to any such administrator or guardian to mortgage such real estate for a greater sum than is necessary to pay the then exising debts and liabilities for which such estate, or any part thereof is then legally liable to be ordered sold."

And section 6365 provides:

"Upon the filing of the petition mentioned in the preceding section, the county judge shall set a time for the hearing of the same and the administrator or guardian shall cause notice thereof to be made by publication in a newspaper published or of general circulation in the county where such hearing is to be had. Said notice shall contain a description of the real estate sought to be mortgaged, and shall be published two weeks successively prior to such hearing."

Thus it will be seen that before the county judge has any authority to make an order authorizing the guardian or administrator to mortgage or incumber the real estate of his ward, notice must be given and upon the return thereof a hearing had.

The proceedings in his case show that the application was made on the 30th day of June, 1913, and without any notice, and, so far as this record discloses, without any hearing being had upon the application except the bare presentation of it, the court made an order authorizing the guardian to invest the money in his hands, amounting to $1,000 in the land in dispute here, and to execute notes with a vendor's lien upon the

land for the balance of the purchase price in the sum of $1,872.17. We are of opinion that the county court is without authority to make an order that would give the guardian the authority to create a debt or obligation that would bind his ward's estate and bind the ward personally to pay a sum of money by the execution of notes without it first being made to appear that the consideration of the notes was necessary for the support of the minor, or unless the court ordered the execution of the notes under the express authority of the statute.

The authority of a guardian to bind the property of his ward by mortgage for a greater sum than is necessary to pay the then existing debts and liabilities for which the estate or any part thereof is liable was disposed of by this court in the case of Roth v. Union Nat. Bank, 58 Okla. 604. 160 Pac. 505, wherein the court said:

"5. Where a guardian's application for authority to mortgage allotted lands of a Cherokee Indian minor, under Laws 1895, p. 37, as amended by Laws 1901, p. 38, as amended by Laws 1905, p. 185 (section 6364, Rev. Laws 1910), shows upon its face that the total indebtedness of his ward's estate is $1,312.98, of which a portion is not subject to be paid or secured by means of such mortgage, and, without alleging any necessity for mortgaging said real estate for more than the indebtedness, subject to be paid or secured by means of such mortgage, prays for an order authorizing him to mortgage the same for $1,800, as a means to pay said indebtedness of $1,312.98, the county court acquires no jurisdiction to determine whether the same should be mortgaged for more than the amount of the indebtedness subject to be paid or secured by means of such mortgage under said statue, and under section 4, of the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), effective on and after July 27, 1908, relating to such lands, with interest thereon, and its order authorizing such mortgage for any excess of such amount, as well as the mortgage given in pursuance thereof, is, to the exent of such excess, void and subject to collateral attack without allegation or proof of fraud."

The same question was before this court for determination in the case of Lee v. Tonsor et al., 62 Okla. 14, 161 Pac. 805, wherein the court, in disposing of the question, used this language:

"(3) Under section 6364, Rev. Laws 1910, the power of the county court to authorize a guardian to mortgage the lands of his wards is limited to debts for which such estate or any part thereof is then legally liable to be ordered sold."

Upon the trial of this case. in order to show authority for the execution of the notes

in dispute here, the plaintiff offered in evidence the petition filed by the guardian in the county court, which was objected to by the defendants, and the court sustained their objection. The plaintiff then offered in evidence the order of the court made on the 30th day of June, 1913, which was likewise objected to, and the court sustained the objection. The plaintiff then offered in evidence the notes in suit here, and also the other notes that are not yet due, and the defendants objected to the introduction of the same, and their objection was by the court sustained.

It is now urged that the court erred in refusing this evidence, and in rendering judgment in favor of the defendants. With this contention we cannot agree. We are of opinion that section 6569, Rev. Laws 1910, supra. giving the county judge the authority to make an order permitting the guardian to invest the proceeds of sales and any other of his ward's money in his hands in real estate, or in any other manner most to the interest of all concerned therein, does not give the county court the authority to make an order authorizing the guardian to invest the money of his ward and at the same time create a lien against the real estate by way of mortgage or otherwise, and further to contract a personal obligation for the payment of a sum of money by the execution of notes. The statute makes provision for the investment of the proceeds of sale and any other of his ward's money in real estate and management and disposition of the estate. The language used clearly shows that the statute contemplates the investment of money already in the hands of the guardian. The money must be available before the investment can be made. To hold otherwise would be to open the door for speculation and adventure by the guardian with the ward's estate, and allow a man possessed of more venture than caution, or one who is improvident or wanting in business sagacity or integrity, to create debts involving the estate of his ward and him personally. Any other construction of our statute would lead to a riot of confusions, and in many instances to the utter dissipation of the ward's estate, and enmesh the ward personally in a web of debts requiring a lifetime to pay. This the guardian is without authority to do, and so an order of the county court authorizing him to do so is void.

Having reached the conclusion that the trial court was right in holding that the county court was without jurisdiction to make the order on the 30th day of June, 1913 we need not pass on the other question

raised with reference to the vendor's lien being enforceable after the transfer of the contract by which it was created.

It is urged by the plaintiff that the defendants cannot affirm in part and disaffirm in part the same transaction; that before the minor should be permitted to defend against the notes in suit here, he should be required to restore the property received but that question was not presented to the court by the pleadings then before it. The proper party should institute suit to rescind and tender back to the minor the amount paid by him.

Finding no error in this record prejudicial to the rights of the plaintiff, the judgment of the lower court is affirmed.

By the Court: It is so ordered.