The plaintiff in error, Emma Talomase, in this cause will be referred to as the ward, and Wadley Kelly, the defendant in error, will be referred to as the guardian, in this opinion.
Wadley Kelly was appointed guardian of Emma Talomase, then a minor, sometime prior to the year 1907. It appears from the record that the ward was born in 1900, and that when she was seven years old she went to live at the home of her guardian. She became of age sometime in 1918. It appears that on the 10th of January, 1919, the guardian signed a verified final report of his guardianship and asked to be discharged as such guardian. The report as filed by the guardian shows a balance on hand, cash in the bank, in the sum of $7.91. This final report was filed in the county court of Okmulgee county on the 18th of August, 1920. On the 22nd of October, 1920, the guardian filed a supplemental final report under oath, showing the ward indebted to him in the sum of $64.57. On the same day objections were filed to such final and amended report, verified by the ward. On the 23rd of October, 1920, the ward filed objections to the final report and all reports filed by the guardian since 1911. A hearing was had in the county court upon the final and other reports and the objections thereto, on the 28th of October, 1920; and on that date a judgment was entered and journal entry filed, finding Wadley Kelly, the guardian, indebted to his ward in the sum of $3,849.86. From this judgment the guardian prosecuted an appeal both upon questions of law and fact to the district court of Okmulgee county. In March, 1921, the cause came on for hearing and the district court appointed Fred Carter referee and set the case for hearing on the 17th of March, 1921. On that date the guardian appeared and asked to file a supplemental report or an amendment to the final report, and upon leave granted filed what he denominated "amendment to final report." In this amendment he asked to include three items of account, amounting to $77.30; and also to include two other items, as follows: Compensation for himself in the sum of $1,000 and attorney fees in the sum of $1,000, and prayed for credit upon his account for the sum of $2,000 to cover said last two items. The cause was then heard before the referee upon the reports and supplemental reports as amended, and the objections thereto as filed in the county court; and at the close of the hearing the referee found a balance due the ward from her guardian in the sum of approximately $2,220, against which sum he allowed the guardian credit for $400 for two years services; $200 for attendance upon the district court trial; $400 for his attorney's services for two years; $250, attorney's fees for the county court trial; $500 attorney's fees for the district court trial; and charged one-half of the court costs in the county court to the ward; and charged all of the costs in the district court, including referee and stenographer's fees, to the ward. This seems to leave a balance due the ward, as figured by the referee in his report, of $471.79. Out of this balance the ward would owe half of the court costs in the county court and all the costs in *Page 214 
the district court trial, including the referee and stenographer's fees.
Upon objections presented to the report of the referee the district court modified the findings of the referee to the extent of reducing the allowance to the guardian by striking out the $200 allowed for his attendance upon the trial in the district court; and allowed $150 for the services of the referee and $85 for the services of the stenographer, and provided that such expense should be divided between the guardian and ward, and otherwise permitted the report of the referee to stand. The order of the district court had the effect of adding to the indebtedness of the guardian to his ward the sum of $200, from which is to be deducted $117.50, half of the referee and stenographer fees leaving an aggregate sum of $554.29, out of which the ward is required to pay half of the court costs in the county court trial, and all of the costs in the district court trial, other than referee and stenographer fees; the aggregate amount of such costs not being stated in the record here, and leaving her, of course, to settle with her own attorneys. If she pays them on the liberal basis fixed in the allowance to the attorneys for the guardian she will not only be required to pay out the entire amount found in her favor, but will owe an additional amount of more than $200. If this judgment is permitted to stand, the ward would better have accepted the amendment to the final report, and made settlement with her guardian by paying him the balance of $64.57, and would thereby have saved for herself, out of the wreck, more than $100. It appears that she has the satisfaction of having won her case against her guardian, if it may be called a satisfaction, but it has cost her the entire amount owing to her by her guardian, and something more, to force him to disgorge. The ward is made to pay handsome fees to her guardian's attorneys to fight her to prevent her, if possible, from having a just settlement with the individual whom the court intrusted with the management of her affairs. It has cost her her balance in the hands of her guardian to establish the falsity of a final report made by her guardian — a report so glaringly false, as to, perhaps, justify the conclusion by a disinterested person that it was willfully and flagrantly false. Could the guardian have been honestly mistaken between the amount of $64.57 that he swore was due him from his ward, and the sum of approximately $2.220 the referee found him owing to his ward?
From the findings and judgment of the district court the ward prosecutes appeal. In her petition in error she urges ten assignments of error, which are argued in her brief under four subdivisions, as follows:
(1) On a trial de novo in the district court, on appeal in probate matters, the district court has no jurisdiction to try out issues not presented in the county court.
(2) Under the evidence in this case, the guardian was not entitled to any credit for attorney fees because no beneficial service was rendered for the ward by the guardian's attorneys.
(3) The guardian was not entitled to compensation for his services because he had practiced fraud upon his ward.
(4) The court erred in charging the court costs to the ward.
1. Upon the first proposition there seems to be an almost hopeless and irreconcilable conflict of authorities. It seems that our own court has not passed directly upon the question here presented.
Parker v. Lewis, 45 Okla. 807, 147 P. 310, was a case where the appointment of a guardian was sought for a certain minor, and from the orders of the county court an appeal was taken to the district court, and from the orders there made an appeal was prosecuted to this court. In the district court an amended protest was filed against the guardian appointed by the county court, and in the protest it was sought to have some other person not under consideration in the county court appointed as guardian. On appeal here this court held that the amended protest could not be considered, and the appointment of a person as guardian who had not been under consideration by the court of original jurisdiction could not be upheld.
The court declared the law, in the syllabus, to be:
"1. The county court alone has original jurisdiction of the appointment of guardians of minors.
"2. On an appeal from the action of the county court in appointing a guardian the district court acquires appellate jurisdiction only.
"3. In the exercise of such jurisdiction, the issues remain the same as in the county court, and amendment which inject new issues on appeal should not be allowed.
"5. The father, having waived his right to appointment in the county court, could not by amendment in the district court confer upon the latter court jurisdiction to try issues not before the county court.
"6. In the trial of appeals from the county court in probate matters, while the cause *Page 215 
is tried de novo, in the district court, the latter court has only the power to render such judgment or make such order as the county court should have made."
We think these declarations of law are applicable here. It will be borne in mind that no item of account was presented in the county court for compensation for services of the guardian or for attorney's fees. The report presented to the county court as amended and as verified by the guardian, showed the ward indebted to him in the sum of $64.57. Upon the trial of the issues made up by the report and the amendment thereto, and the protest of the ward, the county court found the guardian indebted to his ward in the sum of $3,849.86, and an appeal was taken. Then, for the first time and by amendment in the district court, the guardian asked to be allowed compensation for his own services as guardian in the sum of $1,000, and also asked compensation for his attorneys in the sum of $1,000. It was based upon this amendment in the district court that compensation was allowed to the guardian and to his attorneys. Applying the rules laid down in Parker v. Lewis, supra, such compensation for the guardian and his attorneys was not allowable. It was held in the case referred to that the county court has original jurisdiction of the appointment and settlement of the estate of minors. The district court has no original jurisdiction to allow compensation to guardians, nor to allow fees to the guardian's attorneys. When such matters have not been first presented to the county court, the district court acquires no jurisdiction to pass upon the same on appeal when they are first called to the court's attention by an amendment to the report. It was held in the Parker v. Lewis Case that the issues should remain the same in the district court as they were in the county court. In this case there was no issue before the county court as to whether compensation for the guardian should be allowed, or whether fees should be allowed to his attorneys. The amendment to the report made in the district court injected an entirely new issue which was never before the county court for consideration. It was held in the Parker v. Lewis Case, supra, that where the father had waived his rights to be appointed guardian of a minor in the county court he could not by amendment in the district court confer jurisdiction upon the latter court to try issues not before the county court. When the guardian in this cause filed no claim for compensation for himself and his attorneys in the county court, he will be held to have waived any claim for such items. In the case referred to it was held that the district court, in hearing appeals in probate matters, could only render such judgment or make such orders as the county court should have made. Applying that rule here, can it be said that the county court should have made an order either allowing or disallowing compensation for the guardian or his attorneys when no such items were involved in the report as heard in the county court. We think not. If the guardian in this case had employed counsel and presented to the county court a true report of his doing as guardian of Emma Talomase, such as common honesty demands, and had included therein items for his own and his attorneys' services, quite a different situation would be presented. The law requires and honesty of purpose demands that the guardian make a true report of his guardianship. Where the guardian for lack of ability or other reasons is unable to prepare the account so as to reflect the true state of the relationship between the guardian and his ward on final settlement reasonable compensation should be allowed, and no doubt would have been allowed in this case, for a competent accountant or an attorney to properly prepare the report, but any item of such expense must first be presented to the county court for consideration. There are many reasons for thinking that if the guardian had dealt fairly with his ward he would have been properly compensated for his trouble as such guardian, if indeed he had not been already amply compensated, and the expenditure of considerable sums as attorney fees would have been entirely unnecessary and long days attendance upon the trial of the issues would not have been required; and in all probability this case would never have gone further than the hearing in the county court.
2. Under the second proposition presented, that under the evidence the attorneys were not entitled to the fees allowed, we find another reason why the attorney fees should not have been allowed. The allowance made, of $400 for the services of the attorney for two years, is without evidence to support it. There is almost no showing that any beneficial services were rendered to the guardian for and on behalf of his ward, the allowance having been made to the guardian for services rendered including the year 1916. It seems that no service was Tendered in 1917 except, perhaps, preparation of a report for that year. Certainly there is nothing to justify the allowance of $200 for that year. The next service rendered was in the preparation of a final report and supplemental final report; and neither of them were filed until the latter part of 1920, about two years after the ward was of age, and after a citation had been issued by the county court and served upon the guardian. The *Page 216 
final report and supplement thereto seems to have been prepared by the attorney in whose favor the allowance of $200 for two years was made. The report showed a balance in the hands of the guardian of $7.91, and the supplement thereto showed the ward owing to her guardian the sum $64.57. It was upon these reports and the protest made by the ward, on which the county court found the guardian indebted to his ward in the sum of $3,849.86; and the district court found the guardian owing approximately $2,220. It is to be inferred from these facts that the attorney was not employed to render beneficial services to the ward through her guardian. It appears that he was not interested in the matter of rendering services to the ward, but was evidently employed by the guardian to render services for the guardian against the ward, in an effort to overreach her in the adjustment of her affairs. If his employment was not for that studied purpose and intention, it was at least to that effect. Such being the condition of affairs, there is no evidence in the case justifying an allowance out of the ward's money for such services. The $400 allowed to the guardian's attorney for two years services cannot be upheld for the reason that the allowance was made entirely against the weight of the evidence, or, more particularly speaking, without any evidence to support such allowance.
Then, the court allowed against the ward the sum of $250 for the county court trial, and $500 for the district court trial, as attorney fees.
In Parnell et al. v. Wadlington et al., 42 Okla. 363,139 P. 121, it was held by this court that:
"Where a firm of attorneys are employed by the acting guardian of the estate of minor heirs to perform legal services, and such employment is ordered and sanctioned by the probate court, and it appears that such services were necessary and beneficial to the estate, and that the charges therefor were reasonable and just, and where the judgment for the amount claimed is sufficiently supported by the evidence, such judgment will not be disturbed."
That being the rule where the services are necessary and beneficial, the contrary must likewise be true; that is, where the services are not necessary to preserve the estate and of no benefit thereto and not supported by sufficient evidence, they are not allowable. Attorney fees are allowable out of the estates of wards to attorneys for the guardian on the theory that the services rendered are necessary and beneficial to the estate of the ward. An examination of the record here presented establishes beyond any doubt that the trial upon the guardian's final and supplemental reports in the county court was not beneficial to the estate of the ward; but, on the contrary, it appears to have been for the purpose of depriving the ward of substantial rights. The services of the guardian's attorneys were not rendered for the benefit of the estate but were rendered for the guardian in a contest against his ward's rights. Such services were not necessary for her; and were only rendered necessary by the guardian's own conduct in filing a false and incorrect report. Should the ward, under such circumstances he required to pay some astute lawyers to help in keeping her from getting what was coming to her from her guardian? We think not. The items for attorneys fees cannot be allowed against the ward. Parnell et al. v. Wadlington et al., supra; Luke v. Kettenbach (Idaho) 181 P. 705.
3. It is contended by the ward that the court erred in allowing her guardian $400 as compensation for his services.
The statute provides for compensation of guardians for their services. Section 1463, Comp. Stat. 1921, is as follows:
"Every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable."
In this case the guardian made no claim for compensation in the county court. No items for his compensation are listed in either his final report or the supplemental report. It seems to have been with him a matter of second thought to claim compensation, when he found it likely that he would be required to disgorge; and his claim for compensation was first heard of in the district court on appeal. It is perfectly proper and right that a guardian should have just compensation for his services where the estate of the ward is sufficient out of which he may be compensated; and where the conduct of the guardian in handling the ward's estate has been honest and upright, and the estate has been conserved and properly accounted for. In this case it seems that the whole trouble has been brought about by a failure of the guardian to handle his ward's estate in a straightforward manner and make a true report of funds in his hands. Then, besides that there appears testimony in this record justifying a conclusion that the guardian has been amply compensated for his services. It appears that for a long time the ward was a member of his family and did housework there as a servant. Sometime in 1917 the Indian Department built the ward a residence costing nearly $4,000, and *Page 217 
when it was completed the guardian moved into and occupied the building until sometime in 1920, and there is no showing that any rent was ever paid for the use of the home. In addition to that the Indian Department bought the ward a car costing around $1,500, and this car was used by the guardian and his family for their pleasure and convenience for two years or more. In addition to the use of the ward's property the guardian had the use of more than $2,000 of his ward's money, based upon the referee's report. The county court found it to be nearer $4,000. We do not find that interest upon these funds has ever been accounted for. We think the record discloses that the guardian was amply compensated for his services by the matters referred to, and that the allowance of $400 in addition is not supported by the evidence and is clearly against the weight of the evidence. Under the circumstances presented here compensation additional to the use of the ward's property is not allowable. Scheib v. Thompson (Utah) 65 P. 499; In re Thompson, 101 Cal. 349, 35 P. 991.
4. The ward contends that she should not have been charged with the costs or any part thereof, either in the county court or district court; and with good reason. She won her suit against her guardian. The rule is that costs are to be charged to the losing party, and we see no good reason why the rule should be changed here.
We recommend that the judgment of the trial court be reversed, with directions to disallow the $400, $250, and $500 items for attorney fees, and to disallow the items of $400 for compensation for the services of the guardian; and to enter judgment in favor of the ward against the guardian for the sum of $2,220, the amount found due by the referee, and for all costs, including the stenographer and referee's fees.
By the Court: It is so ordered.