Mark S. Revard, a member of the Osage Tribe of Indians, was adjudged an incompetent and a guardian appointed for him by the county court of Osage county in 1920. On July 8, 1926, and January 14, 1927, the said Mark S. Revard filed petitions in the county court of Osage county, wherein he alleged that he was an adult, entirely sane and competent, and prayed that he might have the fact of his restoration to capacity judicially determined, to which applications and petitions Dora B. Givens, the guardian of the said petitioner, filed her answer and objections to the granting of the prayer of the petitioner. Upon a hearing in such matter, the county court found the petitioner incompetent and denied the prayer of the petitioner. In each instance an appeal was taken from the orders and ruling of the county court to the district court, where that court, after hearing certain motions by the guardian to dismiss the appeals, consolidated them and a trial was had before that court on March 3, 1927, which resulted in a judgment, which, omitting the caption thereof and unessential parts, was in substance as follows:
"Whereupon, the court, being fully advised, finds, that the petitioner now is, and was at the time of filing his several petitions in the matters now on trial, mentally competent and able to take care of himself and his property; to which the guardian excepts; that the guardian, Dora B. Givens, since she became the guardian of petitioner, has made herself personally liable for approximately $7,600 for money borrowed and obligations assumed for the use and benefit of said ward, and not yet paid; that former guardians in this guardianship matter have become and are personally liable on obligations made and assumed by them for the use of the petitioner herein, which are outstanding and unpaid.
"The court concludes, as a matter of law, that the petitioner, Mark Revard, is entitled to be adjudged competent and to be discharged from guardianship in this guardianship matter now pending in the county court of Osage county, state of Oklahoma, upon all the obligations for which the guardian. Dora B. Givens, and all preceding guardians in this *Page 204 
guardianship matter, have become and are now personally liable, being fully paid and said guardian and former guardians fully discharged.
"Wherefore, it is by the court adjudged that the petitioner, Mark Revard, now is and was, at the time of filing the several petitions in the matters now on trial to be adjudged, mentally competent and to be discharged from guardianship in these matters, of sound mind and mentally capable of taking care of himself and his property, and that he should be discharged from guardianship and the letters of guardianship heretofore issued to the said Dora B. Givens shall be revoked and the guardianship of the said Mark Revard shall cease upon all the obligations upon behalf of and for the benefit of said ward for which the guardian, Dora B. Givens and all former guardians in this guardianship matter have become and are now personally liable, being fully paid, and said guardian and former guardians being fully discharged from personal liability thereon. That this judgment shall not become effective as an adjudication of competency and discharge of the petitioner herein from guardianship until such personal obligations are fully paid and discharged."
The petitioner, Mark S. Revard, and his guardian, Dora B Givens, each filed motion for a new trial, which motions were overruled and each appeal to this court. Mark S. Revard appearing as plaintiff in error and Dora B. Givens as defendant in error.
Plaintiff in error sets forth in his petition in error five assignments which are presented and argued upon the principal proposition involved, i. e., the district court, having found and adjudged that the petitioner was of sound mind and capable of taking care of himself and property, erred in postponing judgment in accord with such finding and withholding the benefit to petitioner of such finding and adjudication until the indebtedness which his guardians had created in his behalf, and for which they had become personally liable, had been paid and discharged. It being contended by plaintiff in error that the court erred in admitting and considering, over the objections of plaintiff, evidence relating to the guardianship indebtedness which has been assumed by the defendant as guardian, and that the order and judgment continuing the guardianship until said debts and obligations incurred by the guardian on behalf of the ward were paid, were beyond the jurisdiction of the court and without the issue in the case.
The defendant in error filed her cross-petition in this appeal alleging several assignments of error which are presented under three propositions, which will be considered in the order presented.
The first proposition presented by defendant in error is: "The court erred in refusing to strike said cause from the trial assignment." After the appeals were lodged in the district court the guardian filed motions to dismiss the same, which motions were overruled, also leave was granted her to file an answer in one cause, thereafter and prior to the expiration of ten days from date of filing such answer. The cause was set down for trial, and the guardian, respondent, filed motion to strike the cause from trial assignment, and urged that the same should have been stricken because the cause had not been at issue ten days prior to date of trial, and cited section 582, C. O. S. 1921, which reads in part:
"Actions shall be triable at the first term of court, after or during which the issues therein by the time fixed for pleading, are, or shall have been made up"
— and decisions relating thereto in support of such contention.
The cause in the district court was an appeal from the county court, and was a trial de novo on the issues as made up, or as should have been made up in the county court. In re Estate of Talomase, 98 Okla. 212, 225 P. 156; In re Bruner's Guardianship, 111 Okla. 93, 238 P. 448.
"When the issues have once been fully made up by the filing of pleadings, or by failure to file them, the provision of the statute mentioned in the foregoing paragraph has spent its force and thereafter any change in the issues caused by the filing of new or amended pleadings by leave of the court, or consent of the parties, does not, by reason of said section, necessarily work a delay of the trial" C., R.I. P. Ry. Co. v. Pitchford, 44 Okla. 197, 143 P. 1146; Levin Bros. v. MacDonald, 110 Okla. 30, 235 P. 1070.
Section 1422, C. O. S. 1921, relating to such appeal, provides that the records, paper, and proceedings in the case be certified to the clerk of the district court, and the appeal may be heard and determined at any day thereafter by said court at any general, special, or adjourned term.
Under the facts, and in view of the nature of the case, the action of the trial court in refusing to strike the cause from the assignment was not erroneous.
The second proposition presented by the defendant in error is: "The court erred in not holding that the former action barred this action." The former action referred to appears to be one filed by plaintiff, attacking, *Page 205 
by special appearance, the order under which he was adjudged to be incompetent, involving the merits of the former adjudication of incompetency, and praying the court to release him from the orders of the court and for immediate restoration of all his property to him. It does not appear that that cause was filed under the provisions of the section of the statute under which relief is sought in this cause, was not one asking judicial determination of restoration to capacity, and does not appear to have been such an action as to bar the present one.
The third proposition urged by defendant in error is, in substance: "That the evidence was insufficient to support the finding and judgment adjudging petitioner restored to competency." Under such head it is argued that the court has no authority to restore one who has not been adjudged insane; that to decree restoration there must have been a recovery from the former condition, and evidence must show a recovery; that petitioner must show ability to look after his business and his property, and not merely show that he has a mind free from disease.
Section 1449, C. O. S. 1921, provides for the filing of a verified petition with the county court alleging that any person is insane, or from any cause mentally incompetent to manage his property; that the judge must cause notice to be given to the supposed insane or incompetent person of a hearing thereon. And section 1450, C. O. S. 1921, provides that upon a hearing and examination, if it appears to the judge of the county court that the person is incapable of taking care of himself and managing his property, he must appoint a guardian over his person and estate.
Section 1452, C. O. S. 1921, reads in part:
"Any person who has been declared insane * * * may apply by petition to the county court of the county in which he was declared insane, to have the fact of his restoration to capacity judicially determined. * * * If it be found that the petitioner be of sound mind and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person, if such person be not a minor, shall cease."
It is argued by the defendant in error that, since section 1452 does not specifically name therein any person "mentally incompetent," the same does not authorize the court to adjudge one restored to capacity unless he was previously adjudged insane.
We do not consider it necessary that a party must have been adjudged insane in order to avail himself of the provisions of section 1452, supra. We think any adult person for whom a guardian has been appointed under the provisions of sections 1449 and 1450, supra, is intended to be covered by and may avail himself of the provisions of section 1452, supra.
Were we to agree with the argument of defendant, then a person who had been adjudged an incompetent, and a guardian appointed for him, would be unable to be discharged from such guardianship until some further statutory enactment be had authorizing discharge. Were there no more specific statute relating thereto, we think the provision of section 1492, C. O. S. 1921, which reads —
"The guardian of an insane or other person may be discharged by the judge of the county court when it appears to him on the application of the ward or otherwise, that the guardianship is no longer necessary"
— sufficient to authorize the court to discharge, upon a proper showing, any person for whom a guardian has been appointed under the provisions of sections 1449 and 1450, supra. Section 13, art. 7 of the Constitution, vested the county court with the general jurisdiction of a probate court, with power to appoint guardians for minors, idiots, lunatics, persons non compos mentis, and common drunkards, and to transact all business appertaining to their estates. While the question of the jurisdiction and right of the court to so order does not appear to have been raised, yet this court in the case of Swift v. McKinney, Gd'n, 123 Okla. 1, 251 P. 734, apparently indirectly approved of the judgment of the trial court in adjudging restoration of an incompetent, as in the instant case. The trial court found as a matter of fact that the petitioner was sane and capable of taking care of himself and his property, which finding was in accord with the requirements of the statute, and was such a finding that met the requirements which defendant says needs must be found, only it is in different language. From an examination of the entire record, we conclude and hold that the grounds for reversal as set forth in defendant in error's petition are not supported by the record, and the ruling and finding of the court complained of by the defendant in error was not erroneous.
What we have said with reference to defendant's third proposition is applicable to plaintiff's argument on his petition in error. As stated herein we consider sections *Page 206 
1452 and 1492, C. O. S. 1921, supra, as empowering the county court, upon proper application, to hear and determine restoration to capacity. If there were no statutory provisions relating to the matter, we think section 13, art. 7 of the Constitution, vesting the county court with general jurisdiction of a probate court sufficient to authorize the court to inquire into and determine whether there was further necessity for guardianship of an adult. If the adult has been found sane and competent to take care of himself and his property, then there apparently would exist no further need or grounds for a guardian of such person. The statutes do not authorize or empower the appointment of a guardian merely because the individual may be negligent of his debts or heavily indebted, neither does section 1452, supra, or any other provision of statute, make it a condition precedent to the restoration and discharge from guardianship that the debts personally assumed or obligated by the guardian on behalf of the ward be paid. The present guardian in her answer herein says if the debts of the ward, which she has personally obligated herself to pay, be satisfied, then she is willing that petitioner be adjudged competent, and in her brief says it would be unjust, inequitable, and a fraud upon her, to discharge the ward without first requiring payment of the debts of the ward which she says she personally assumed under authority of the county court.
The defendant, guardian, points to no provision of statute or law directing that a guardian shall become personally liable for the debts of the ward or his estate, nor do we observe any order of court in this cause directing the guardian to personally assume or obligate herself for moneys borrowed on behalf of the ward or his estate. Even had the court so ordered, it would not be enforceable or valid unless within the power and authority of the court. Yawitz v. Hopkins,70 Okla. 158, 174 P. 257; Cameron Co. v. Yarvey, 71 Okla. 79,175 P. 206; Gaines v. Montgomery, 82 Okla. 275, 200 P. 219.
It appears in this case that the only income the ward has and the only property he possesses at this time is the yearly allowance paid him as a member of the Osage Tribe, and the right thereto as a member of such tribe. It may be difficult to collect any sums owing by the ward or his estate, but we see no legal reason or authority to retain guardianship over the ward and his estate by reason of such fact. If such were the rule the ward would likely remain a ward a long time as his debts and obligations do not appear to have been greatly reduced during the period of guardianship. It was held in the case of Scheuer's Estate (Mont.) 79 P. 244, a case construing the provisions of a statute sowewhat similar to section 1452, supra, of our statute, that the guardianship terminated ipso facto by an adjudication of restoration to capacity. No final account having been filed by the guardian, no issue thereon is before this court. The county court may hear and determine issues arising upon guardian's final account after guardianship is terminated:
"In the matter of settlement of a guardian's account, the guardianship may be terminated by the majority of the ward or otherwise, but the court has jurisdiction to require and enforce settlement of final account of the guardian." Howe v. Tarloshaw, 103 Okla. 269, 225 P. 983; Swift v. McKinney,123 Okla. 1, 251 P. 734; In re Estate of Aubrey, 128 Okla. 79,261 P. 192.
From an examination of the record in this cause, we are of the opinion that that part of the judgment of the trial court postponing and suspending judgment, restoring the petitioner to capacity until such time as the obligations of the guardians of the ward are satisfied, was without the issues in the case, and not within the power of the court to so order.
The cause is therefore reversed, with directions to enter judgment restoring the petitioner to capacity in accordance with the finding that he is of sound mind and mental capacity of taking care of himself and his property, and that he be discharged from guardianship.
BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.
By the Court: It is so ordered.