## PRUITT v. PILGREEN.

No. 26294.  Dec. 8, 1936.

Rehearing Denied Jan. 5, 1937.

Application for Leave to File Second Petition for Rehearing Denied Jan. 19, 1937.

J. Thad Baker, Owen Black, Warren F. Brumfield, of the U. S. Veterans Administration, and C. C. Williams, for plaintiff in error.

Babb & Babb and Broaddus & Fite, for defendant in error.

CORN, J. On September 11, 1930, John E. Pruitt, a World War Veteran, was adjudged an incompetent by the county court of Le Flore county, and H. S. Pilgreen was appointed guardian of the person and estate of said ward. Between November 12, 1930, and September 1, 1931, said guardian received from the United States $14,697.73 as disability compensation and war risk insurance for said ward. On October 26, 1931, the guardian filed with the county court his first annual accounting, showing all of said money expended except $3.75; among such expenditures was the sum of $682.38 which the guardian had paid to himself as his compensation as such guardian. Said accounting or report also showed that the guardian had in his hands property of the ward, which had been purchased with said funds of the ward, valued as follows: Real estate in Poteau, Okla., $4,750; also personal property as follows: one automobile $1,400, household goods $1,200, diamond ring $250, saxophone $134, and radio $158.

On February 25, 1932, exceptions were filed to said account by Honorable J. Thad Baker, Regional Attorney of the United States Veterans Administration. Said account or report and exceptions came on for hearing before said county court on the 25th day of February, 1932, and the court, after hearing the testimony offered in support of the report, and also in opposition thereto, approved and confirmed said report and account.

An appeal was taken from said order or judgment to the district court, on both questions of law and fact. In said district court a trial de novo was had, commencing on the 20th day of December, 1932, and continued from time to time until the 23rd day of August, 1933, on which last-mentioned date the taking of evidence was completed, and a request having been made for written findings of fact and conclusions of law, the cause was further continued until September 22, 1934, for the preparation of said findings and conclusions of law thereon, on which last-mentioned date the court, after having made such findings of fact and conclusions of law, entered its judgment allowing the guardian only $300 as compensation and surcharging him with $382.38, being the difference between the compensation claimed by the guardian and the compensation as allowed by the court. In all other respects said report and account was fully approved and confirmed. There was a rather lengthy hearing had in the district court, with much testimony taken, and a large number of exhibits introduced. The court, as requested, made elaborate findings therefrom.

Pilgreen ceased to be guardian and A. J. Pruitt is at present such guardian and prosecutes this appeal from the judgment of the district court.

In the brief of appellant it is stated:

"It was not contended in the lower court, nor is it here, that defendant (H. S. Pilgreen) perpetrated any fraud against the ward or embezzled or misappropriated any of his funds."

It appears that formal orders of the court were obtained authorizing certain of the expenditures of said funds. As to the other expenditures, it also appears that, while no formal court orders were obtained, the checks issued by the guardian in making such expenditures were indorsed by the county judge "approved if sufficient funds in the account," followed by the signature and title of said judge. It further appears that in those instances where the check bore such indorse-

ment the county judge was conferred with before issuing such check, either by the guardian, the ward, or both of them together, and the facts with reference to such proposed expenditure being thus laid before said county judge, the expenditure was in this more or less informal manner authorized by such county judge.

Honorable Grover Flanagan was the county judge during the latter part of the year 1930, and thus approved many of said checks. He was succeeded as county judge in the early part of the year 1931 by Honorable T. N. Sanford, who continued the same practice as to the remainder of the checks.

It also appears that the ward was a widower at the time he was placed under guardianship and had a son about 12 or 14 years of age; that the sum expended for the real estate and household goods was for the purchase of a home for said ward; that also during the tenure of office of Mr. Pilgreen as guardian the ward again married and there was some expense in this connection. The son also lived at the home for a short time. At the time of the trial in the district court, however, the ward and his wife were separated. The ward also receives as compensation from the United States Veterans Administration $137.50 per month, which it is expected will continue as long as he lives, and in addition thereto the son receives $20 per month from said administration.

Among other witnesses at the trial in the district court was the guardian, H. S. Pilgreen, and also Honrable Grover Flanagan, who was again at that time county judge; Honorable T. N. Sanford having died.

This court on appeal in these matters will not disturb the judgment of the lower court, unless against the weight of the evidence. Howe v. Tarloshaw, 103 Okla. 268, 225 P. 983.

In Parker v. Lewis, 45 Okla. 807, 147 P. 310, this court ruled in paragraph 6 of the syllabus as follows:

"In the trial of appeals from the county court in probate matters, while the cause is tried de novo in the district court, the latter court has only the power to render such judgment or make such order as the county court should have made."

Also in Re Bruner's Guardianship, 111 Okla. 93, 238 P. 448, this court said:

"* * * Under these provisions, the appeal being on questions of both law and fact, it was the duty of the superior court to hear the evidence and decide the questions of fact and law presented without reference to the conclusion reached in the county court. * * *"

In the district court Judge Flanagan testified that he satisfied himself of the propriety of each expenditure before approving the check therefor. Doubtless Judge Sanford did likewise as to the checks approved by him. Approximately half of expenditures herein were made under formal orders of the court filed in the proceedings, and the plaintiff in error does not question those. The remainder of the expenditures were, as heretofore stated, made by checks, which checks were approved by one of the two county judges mentioned.

The plaintiff in error insists that all such expenditures which were made without the formal order authorizing the same should be disallowed as being unauthorized. Generally, guardians are not lawyers and doubtless seldom keep an extensive set of books. Such guardians handle their affairs in a practical method without complete knowledge of the necessity of a formal order filed in the case authorizing each expenditure before the same is made. They look to the county judge for advice and directions. If the guardian lays the full facts before the county judge and gets his advice and authorization, even though verbally, before making an expenditure, it would seem manifestly unjust to said guardian in such circumstances for this court to disallow the expenditure merely because no prior formal order therefor was filed of record; especially is this true in the absence of fraud where the county court and district court on appeal, in considering the account filed by the guardian and objections thereto, hear all the evidence relating to the same and approve such expenditure upon such formal hearings.

A formal prior order filed in the case authorizing an expenditure is not necessary if the expenditure be such that the county court or the district court on appeal, after hearing the facts relating thereto, approves the same.

In McDougal v. Kersey, Adm'r, 108 Okla. 231, 236 P. 7, this court laid down the rule:

"* * * And in Yawitz v. Hopkins, 70 Okla. 158, 174 P. 257, it was held by this court in the body of the opinion at page 258 (70 Okla. 159):

"'Under this section (6556, R. L. 1910, which is 1469, C. L. 1921) of the statute, it would not be necessary for the guardian to procure an order of the court directing him to invest the funds of his ward. * * *'

"The difference being that, if a guardian

obtains a valid order from the county court to make a specific investment, then he and his bondsmen are protected against the result of such investment, but if he makes such investment upon his own judgment, without an order of the county court, then he does it at his own peril and he and his bondsmen may be held responsible for fraudulent investments.

"In the case at bar no investments are pointed out as having been made by the guardian which he would not have had authority to make without the purported order of the county court to do so. Hence, the district court had jurisdiction in the trial de novo to determine the validity of every act of the guardian during the course of his guardianship. * * *"

The district court made full and complete findings, taking up the various items of expenditure which were drawn in question in the guardian's account. Said list of expenditures are rather lengthy, and it would serve no useful purpose to discuss the various items. The district court was somewhat critical of the cash advancement made by the guardian to the ward, but upon consideration of the whole case, approved the same; a portion of which finding is as follows:

"The guardian admitted while on the stand that the ward was spending too much money, but said that he could not hold him down, etc. In this the guardian was derelict in his duty, there can be no doubt about that. But considering the following facts and circumstances: that the ward got the money himself, that the guardian did not use or profit by the use of the money of the ward, and there is no charge of misappropriation of the funds by the guardian; and that the fund was under the joint control of the guardian, the county judge and the agent of the bonding company, all of whom concurred in the cash advances by the guardian to the ward; does it seem right, equitable or just to surcharge the guardian with any part of the funds he let the ward have, and no part of which the guardian received himself, and require the guardian to replace the funds that the ward used himself? I do not think so."

It, therefore, appears from the record that a hearing was had in the county court, at which all the acts of the guardian and his expenditures drawn in question here were open for consideration and approval or disapproval. Likewise, in the district court upon appeal a full and complete hearing was had upon the same matters, at which much evidence, documentary and otherwise, was introduced, and which court had full power and authority to investigate and approve or disapprove all of the acts and expenditures of said guardian, and after a full and complete hearing approved the account and the expenditures of said guardian, with the exception of the surcharge mentioned above. Thus two courts heard the evidence and reached the conclusion that the expenditures were proper and should be allowed, with the exception mentioned. We cannot hold that said findings of said two courts are against the weight of the evidence.

The judgment of the district court is, therefore, affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur.