2000 OK CIV APP 33

**In the Matter of the ESTATE OF Matthew LaROSE, Tracy LaRose, James LaRose and John LaRose, minors,**

**Terry LaRose and Lawyers Surety Corporation, Appellants,**

v.

**Tracy LaRose; John LaRose; and Orren Delbert Wilhite, as Personal Representative of the Estate of James J. LaRose, deceased, Appellees.**

**Nos. 91,075, 91,391.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 22, 1999.

**1020**

Kevin Schoeppel, Jacksonville, Florida, for Appellant Terry LaRose.

George Hooper, Tulsa, Oklahoma, for Appellant Lawyers Surety Corporation.

Ernest B. Day, Jr., Tulsa, Oklahoma, for Appellees.

## OPINION

ADAMS, Judge:

¶ 1 Terry LaRose (Guardian) and his surety, Lawyers Surety Corporation (Surety), appeal the trial court's order surcharging Guardian and granting judgment to each of the appellees after concluding Guardian failed to properly account for funds he received for the appellees and which he contends were used for the appellees' benefit and support.[1] The trial court made a specific finding that Surety had participated in the

proceedings and was bound by the judgments granted against Guardian. The trial court also ordered Guardian to pay attorney fees and costs to the appellees, and a second appeal was filed. By previous order, the Oklahoma Supreme Court has consolidated both appeals.[2]

## EVENTS PRIOR TO APPEAL

¶ 2 On January 20, 1982, Guardian, the natural parent of the appellees (the Wards[3]), was appointed guardian of their persons and estates and Surety issued a $72,000 bond. The order allowed Guardian to withdraw $3,000 per year to be placed in a checking account "for the use and benefit of the maintenance, support and education" of the Wards and authorized him to expend that "sum on a continuing basis annually" for the Wards. He also was ordered to "annually make proper accounting" to the court. In late 1983, Guardian and the Wards moved from Oklahoma to Michigan.

¶ 3 The Probate Court of Jackson County, Michigan issued "Limited Letters of Authority (Restricted Account)" in four separately numbered cases (collectively, the limited conservatorship orders) to Guardian on November 10, 1983, and he was appointed as conservator of the estates of his then-minor children, the Wards. The limited conservatorship orders required the deposit of funds of the conservatorship in a licensed financial institution in Jackson County, Michigan subject to the express restriction that funds and any interest "shall not be released or withdrawn from the account without the prior written order of the court."

¶ 4 In February of 1984, Guardian applied to the district court for and was granted permission to move the Wards' funds, then

---

1. The trial court surcharged Guardian for losses "resulting from the defalcation of the Guardian" and entered a judgment against him in favor of Tracy LaRose for $32,081.20, a judgment for $31,195.57 in favor of John LaRose, and a judgment for $31,195.57 in favor of the estate of James LaRose.

2. In the second appeal, Appellants do not dispute the amount of the award or that an attorney fee award was appropriate in this type of case. However, they contend the trial court order sur-

charging Guardian was erroneous and therefore any attorney fee award based on that surcharge was likewise erroneous. Accordingly, we need not consider those arguments separately.

3. Although Guardian was appointed to manage the estate of all four of his children, one did not participate in the proceedings. The three appellees are, for the purposes of these proceedings, "the Wards."

having a net total of $54,179.32, to the Michigan conservatorships. The Oklahoma bank holding the Wards' funds transferred them to a Michigan bank. That bank allowed Guardian to withdraw funds from the account without prior court authorization. According to Guardian's own records, in June of 1984 the Wards' funds still totaled almost $50,000. When Guardian and the Wards moved back to Oklahoma in mid–1984, Guardian used $39,000 of the Wards' funds to purchase a house and land in Stilwell, Oklahoma and used additional sums for moving expenses and property improvements.[4] According to the records Guardian produced, by the fall of 1984 just under $4,000 remained of the Wards' estates. On October 23, 1992, the Wards instituted proceedings for an accounting and final settlement by Guardian.

## STANDARD OF REVIEW

■ ¶ 5 Where a final account of a guardian is presented and considered and surcharges made and disallowed, and thereafter an appeal is taken, the matter will be considered as an appeal from an equity judgment and the surcharges made or disallowed will be approved where such action is based on competent evidence and not clearly against the weight of the evidence. *In re Guardianship of Durnell*, 1967 OK 62, 434 P.2d 905. The judgment of the trial court in a settlement of a guardian's account will not be disturbed unless against the weight of the evidence. *Pruitt v. Pilgreen*, 178 Okl. 608, 64 P.2d 263 (1936).

## JURISDICTION

¶ 6 Guardian and Surety (hereafter collectively, Appellants) argue that the trial court lost subject matter jurisdiction over the $54,179.32 of guardianship funds when the funds were transferred to the State of Michigan. It is undisputed that the funds were wired from an Oklahoma bank to a bank in Michigan. Appellants argue that, under 30 O.S. 1991 § 4–607, jurisdiction ended in Oklahoma at that point. Section 4–607 provides for the discharge of a local guardian "on filing with the district court" of the "receipt ... of the foreign guardian" for property transferred out of state. Based upon the events reflected in this record, we disagree with this analysis.

■ ¶ 7 A February 24, 1984 Order of the District Court for Rogers County, Oklahoma allowed Guardian to transfer funds to Michigan "pursuant to orders issued" in the Michigan probate court but also provided that "all other terms and conditions" of the Oklahoma guardianship "shall remain in full force and effect *until such time as the Guardian has filed a complete accounting of all transactions concerning said guardianship* which is ordered to be filed within sixty (60) days hereof." (Emphasis added). The limited conservatorship orders provided that "written verification of the deposit of said funds shall be presented to the court within 30 days of your receipt of any funds of said estate." It is undisputed that Guardian did not file "a complete accounting" within sixty days as required by the Oklahoma district court's order, did not file any written verification of receipt of assets as required by the Michigan limited conservatorship orders,[5] and did not file a receipt with the Oklahoma district court as the "foreign guardian" of the assets.

---

4. It is not controverted that Guardian took title to the house and land in his individual name and that of his second wife and that they gave a mortgage on the property. Guardian claimed that he told the Wards that the house and land belonged to the Wards. However, he also admitted that neither he nor his second wife ever paid rent to the Wards' estates during the years they occupied the premises. Part of the land was sold to one of Guardian's relatives, and he submitted no record relating to the proceeds, variously given as $300 and $700. The mortgagee foreclosed on the house and remaining land while the accounting proceedings were pending in the trial court.

5. Guardian not only failed to inform the Michigan court of the transfer of the funds, but, in July of 1984, he signed and filed petitions in each ward's case with the Michigan court stating, under penalty of perjury, that as to each case "all of the assets of said Conservatorship have remained in Claremore County, Oklahoma ... and have not been removed to the State of Michigan" and asking that the court treat the information as "his FIRST AND FINAL ACCOUNT and discharge him from his duties." (Emphasis in original.)

¶ 8 The February 24, 1984 Order and § 4–607 set forth specific conditions for the ending of the court's oversight of assets placed in guardianship and transfer of oversight to the Michigan courts. Those conditions were not met, and no discharge occurred. *Accord, Mason v. Rose*, 176 Okl. 258, 55 P.2d 765 (1936). The Oklahoma district court retained jurisdiction over the assets and could compel Guardian to render an accounting of the Wards' property.

## FULL FAITH AND CREDIT

■■■ ¶ 9 Appellants argue that the trial court erred in failing to accord full faith and credit to a Michigan judgment. They claim that if that judgment is given proper treatment, the Rogers County district court lacked subject matter jurisdiction to order Guardian to submit an accounting because the accounting proceedings are barred "under the doctrine of estoppel by judgment/res judicata/issue preclusion."[6] Where a party relies upon a judgment, the opposite party may always inquire into the jurisdiction of the court to render it. *Williamson v. Berry*, 49 U.S. 495, 8 How. 495, 12 L.Ed. 1170 (1850); *Hartford Accident & Indemnity Co. v. Hembree*, 193 Okl. 249, 142 P.2d 618 (1943). A rebuttable presumption arises that a foreign court rendering the judgment sought to be enforced has jurisdiction and that the judgment is prima facie valid unless the contrary is shown by proof or by the record itself. *Pettit v. American Nat. Bank of Austin*, 1982 OK 85, 649 P.2d 525.

¶ 10 The judgment at issue was rendered by a Michigan court in conjunction with a lawsuit initiated by the Wards against the Michigan bank. The Wards charged the Michigan bank with tort and contractual violations arising from Guardian's withdrawals of assets without prior court approval. The bank filed a third-party action against Guardian to the extent of any judgment recovered by the Wards. It is undisputed that prior to the entry of the Michigan judgment, one of the Wards was dismissed as a party to the Michigan proceedings.[7] The judgment at issue is a directed verdict in favor of Guardian against the Michigan bank rendered in proceedings in the third-party action. The judgment included a "finding" that the Wards had received the full benefit of all funds withdrawn by Guardian from the Michigan bank. None of the Wards participated in or were made a party to those proceedings.

■■■ ¶ 11 Appellants' argument is premised upon the theory that the Michigan bank was "subrogated" to rights of the Wards and therefore the Wards should be bound by the Michigan court's finding in the directed verdict that they had received the full benefit of all the funds which Guardian had withdrawn from the Michigan bank without court approval. The argument also is necessarily premised upon a supposition that the Michigan court had jurisdiction to render the decision it rendered. The Michigan court clearly had jurisdiction to determine whether a contractual relationship entered into in Michigan had been breached by a party to the contract. However, whether or not an expense is properly chargeable against a ward's estate is a question for a court with jurisdiction over the ward's estate. The issue is not, as Guardian argues, whether the Wards received some benefit but whether the expenditures should be charged against their es-

---

6. Res judicata acts as a bar to re-litigation of the same cause of action between the same parties, while collateral estoppel and estoppel by judgment operate with respect to a different cause of action when one or more issues was previously litigated by the parties in another action. *Wabaunsee v. Harris*, 1980 OK 52, 610 P.2d 782.

7. Appellants argue that all the Wards also should be barred because of their participation in mediation proceedings conducted in conjunction with the Michigan law suit. Appellants direct our attention to letters from the Wards' Michigan counsel in support of their arguments. The let-

ters merely demonstrate that for some period of time there was no meeting of the minds regarding proposed release terms and that a check had been issued but it had not been cashed and was probably stale. The Wards testified that they did not sign any releases and, after the opinion in *Kirkpatrick v. Chrysler Corporation*, 1996 OK 136, 920 P.2d 122, was rendered, two of the Wards accepted a compromise settlement. The underlying proceedings did not address any impact of the compromise amount upon Surety's liability on its bond to those two wards, only the accounting of Guardian.

tates.[8] The Michigan court never acquired jurisdiction over the guardianship assets and lacked jurisdiction to determine what charges could properly be made against the Wards' estates. Any pronouncement by the Michigan court in that regard need not be accorded full faith and credit and does not serve as a bar to this litigation.

## SPOLIATION OF EVIDENCE

¶ 12 Appellants claim that bank records, canceled checks, receipts, and other financial documents Guardian needed to make a proper accounting were taken and not returned by the Wards. Because of this, they argue, Guardian is entitled to a presumption that the records would have been unfavorable to them, citing *Barker v. Bledsoe*, 85 F.R.D. 545 (W.D.Okla.1979).

¶ 13 Beginning in 1983, Guardian was under a duty to provide an annual accounting to the court. The first accounting Guardian submitted was not filed until after the Wards moved for an inventory and final accounting on October 23, 1992. The Wards testified that in July and September of 1992, nearly ten years after Guardian's duty to keep records and to account for expenditures was imposed, they took a manila folder containing records from a filing cabinet, copied the records, and returned them. They denied withholding or destroying any of Guardian's records. Guardian testified that the folder was much smaller after it was returned and that cancelled checks and receipts were missing from the folder.

¶ 14 The presumption noted in *Barker* is rebuttable. Here, the trial court had witnesses before it and was in a better position to determine the weight and credibility to be accorded the testimony than is the appellate court from the bare, dry record. *Potter v. Nix*, 180 Okl. 196, 69 P.2d 48 (1937). In a settlement of a guardian's account, the burden of proof of genuineness and correct-

ness, whether the accounting is contested or not, is on the guardian. *Holder v. Holder*, 187 Okl. 45, 100 P.2d 857 (1940). The Wards did not have the burden of showing that Guardian's accounting was incorrect, he had the burden of showing that it *was* correct.

¶ 15 Guardian, as natural parent of the Wards, was under a duty to provide his children with support and education out of his personal funds unless and until it is shown that it is necessary to dispose of the Wards' estate, or some portion thereof, in order to defray such expenses. *See Chambers v. Chambers' Estate*, 202 Okl. 412, 214 P.2d 901 (1950). The question of what is properly to be charged to the Wards' estate was a fact question.

¶ 16 The credibility to be assessed the parties' testimony on this disputed fact was for the trial court and its conclusions in this regard have not been demonstrated to be clearly against the weight of the evidence deduced. No violation of "fundamental due process," which Guardian argues results from the alleged spoliation of evidence, is shown by this record.

## ATTORNEY FEES

¶ 17 On June 11, 1998, the Oklahoma Supreme Court granted a motion by Appellants in appeal number 91,391 to consolidate that appeal with the one from the accounting proceedings. Surety appeals the award to Wards of costs in the sum of $1,168.97 and attorney fees of $38,440. All the arguments of error are tied to and dependent upon arguments about jurisdiction, full faith and credit, "estoppel by judgment/res judicata/issue preclusion," and spoliation of evidence, which have been rejected. Neither Appellants' brief in chief nor their reply brief argue that the costs and fees awarded were unreasonable. The award of costs and attorney fees is affirmed.

---

8. For example, as noted by Wards in the trial court, Guardian is their natural parent and had a duty to support them if he reasonably was able to do so. Therefore, even if the Wards received a benefit, a question remained whether their estates or Guardian should bear the cost of conferring that benefit.

## CONCLUSION

¶ 18 The Decree of Devastavit and Order Surcharging Guardian rendering judgment against Guardian in favor of ward Tracy LaRose for $32,081.20, in favor of John LaRose for $31,195.57 and in favor of Orren Delbert Wilhite as personal representative of the estate of James LaRose for $31,195.57 are affirmed.

**AFFIRMED**

HANSEN, P.J., and CARL B. JONES, C.J., concur.