# PARKER *et al.* v. LEWIS.

No. 6032.   Opinion Filed March 16, 1915.

(147 Pac. 310.)

1.   **GUARDIAN AND WARD**—Appointment of Guardian—Jurisdiction. The county court alone has original jurisdiction of the appointment of guardians of minors.

2.   **GUARDIAN AND WARD**—Appointment of Guardian—Appeal—Jurisdiction. On an appeal from the action of the county court in appointing a guardian, the district court acquires appellate jurisdiction only.

3.   **GUARDIAN AND WARD**—Appointment of Guardian—Appeal—Issues—Amendments. In the exercise of such jurisdiction, the issues remain the same as in the county court, and amendments which inject new issues on appeal should not be allowed.

4.   **GUARDIAN AND WARD**—Appointment of Guardian—Appeal—Jurisdiction. Where, in a contest in the county court for the appointment of a guardian for a minor under 14 years of age, the petitioner and the child's father, the only living parent, appear, and the latter asks that his father (the child's parental grandfather) be appointed, and the court appoints the former, from which order an appeal is taken to the district court, where the father is permitted to file an amended protest against the stranger's appointment, and asks that he be appointed, but in the event the court should consider it for the child's best interest that his father (the child's grandfather) be appointed, the district court, being without jurisdiction to appoint a guardian, commits no error in refusing to appoint the father.

5.   **GUARDIAN AND WARD**—Appointment of Guardian—Appeal—Issues—Amendment. The father, having waived his right to appointment in the county court, could not by amendment in the district court confer upon the latter court jurisdiction to try issues not before the county court.

6.   **APPEAL AND ERROR**—Intermediate Appeal—Trial De Novo—Judgment. In the trial of appeals from the county court in probate matters, while the cause is tried de novo. in the district court, the latter court has only the power to render such judgment or make such order as the county court should have made.

7.   **GUARDIAN AND WARD**—Appointment of Guardian—Right—

Relinquishment. Where a parent relinquishes, in favor of his father, his preference right to appointment as guardian of his minor child under 14 years of age, and a contest arises between such grandfather, on the one hand, and a stranger acting at the instance of a relative of the child, the mother being dead, the grandfather, under section 3332, Rev. Laws 1910, being in all respects a suitable person, is entitled to be appointed the child's guardian.

8.   GUARDIAN AND WARD—Appointment' of ' Guardian—Right—Request of Mother. The wishes of the deceased mother, made shortly before her death, naming a relative as the one she desires to have the possession of her minor child, where the child's father is living, will not authorize the appointment of a stranger as its general guardian, though the child's possession be given such relative.

(Syllabus by the Court.)

*Error from District Court, Murray County;*

*R. McMillan, Judge.*

W. N. Lewis was appointed guardian of Susie Ann Parker, a minor under 14 years of age, and, from an order of the District Court affirming the decree of appointment, Joseph Parker and another bring error. Reversed and remanded.

*John H. Casteel* and *Walter E. Latimer,* for plaintiffs in error.

*E. W. Fagan* and *W. N. Lewis,* for defendant in error.

SHARP, J.   On the 31st day of March, 1913, defendant in error, W. N. Lewis, filed in the county court of Murray county his petition, asking to be appointed the guardian of Susie Ann Parker, the four year old daughter of Joseph Parker and Josie Parker, deceased. In his petition, Lewis states that he is acting upon the request of Mary Ann Cobb, maternal grandmother of said minor child, and David Shelby, district Indian agent. On April 11th following, Joseph Parker filed in said court his protest against the appointment of Lewis as guardian of his minor child, and asked therein that the court

appoint his father, John Parker, the child's guardian. A trial being had, and all interested parties being present, the court appointed W. N. Lewis guardian both of the person and estate of said minor, and directed that letters of guardianship issue to him upon his qualifications according to law. From this order an appeal was prosecuted to the district court, upon questions both of law and fact.

The case coming on to be heard in the district court, Joseph Parker obtained leave to file therein an amended protest, in which he asked that the court appoint him guardian both of the person and estate of said minor, but that, in the event the court should be of the opiinon that it was to the best interest of said minor and her estate, the court appoint his father, John Parker, guardian. The decree of the district court affirmed that of the county court, and in addition ordered that the custody of the child be awarded to its maternal grandmother, Mary Ann Cobb. From the decree both John and Joseph Parker have appealed to this court.

On the part of plaintiffs in error it is earnestly insisted that the district court erred in not appointing Joseph Parker, father of Susie Ann Parker, her guardian, and section 6530, Rev. Laws 1910, and other sections of the statutes, are relied upon as grounds for reversal. Counsel also cite the opinion of this court in *Jamison v. Gilbert*, 38 Okla. 751, 135 Pac. 343, 47 L. R. A. (N. S.) 1133; and *Popham v. Cross*, 41 Okla. 629, 137 Pac. 674, as authorities sustaining their contention. If this contest were one between the father and defendant in error, or, for that matter, Mary Ann Cobb, the grandmother, under the evidence we would have no hesitancy in following the rule announced in *Jamison v. Gilbert, supra*, but, according to the facts shown by the record, we are not called upon to determine such a controversy. Joseph Parker did not ask to be appointed his child's legal guardian until the case reached the district court on appeal, but on the other hand, while the proceedings were pend-

ing in the county court, expressly waived his right to such appointment. The issue before the county court was: Which of the two, W. N. Lewis or John Parker, the child's paternal grandfather, should be appointed her guardian?

By section 12, art. 7, of the Constitution, the county court, coextensive with the county, is vested with original jurisdiction in all probate matter (*Davis, County Judge, v. Caruthers, Dist. Judge,* 22 Okla. 327, 97 Pac. 581) while by section 13, art. 7, the county court is given the general jurisdiction of a probate court, including power to appoint guardians. By section 16 of said article, appeals in probate matters are to be taken from the judgments of the county court to the district court of the county, where the same shall be tried *de novo* upon questions of both law and fact. *Apache State Bank v. Daniels,* 32 Okla. 121, 121 Pac. 237, 40 L. R. A. (N. S.) 901, Ann. Cas. 1914A, 520; *Welch v. Barnett et al.,* 34 Okla. 166, 125 Pac. 472; *Barnett, Guardian, v. Blackstone Coal & Milling Co.,* 35 Okla. 724, 131 Pac. 541; *In re Theimer et al.,* 40 Okla. 235, 137 Pac. 358. Section 10, art. 7, confers upon the district court such appellate jurisdiction as may be provided by the Constitution or by law. Therefore the county court alone had original jurisdiction of the guardianship proceedings; the district court having only appellate jurisdiction thereof. The amendments made in the district court injected into the case an issue not before the county court; and, while no objection thereto appears to have been made, it is urged here that the application for letters of guardianship of the father not having been before the county court, is not properly before this court.

While by section 16, art. 7, Constitution, it is provided that, on appeal to the district court in probate matters, the cause shall be tried *de novo* upon questions of both law and fact, we are not to understand that thereby new and distinct issues may be made for the first time. A trial *de novo* has a well-defined and generally understood meaning, and does not contemplate the

framing of new and different issues in the appellate court. In *Ex parte Morales* (Tex. Cr. App.) 53 S. W. 107, it was said that a trial *de novo* on appeal requires that appeals be tried upon the original papers and upon the same issues as had below, and that the term *"de novo"* meant "anew," "a second time," citing Rap. & L. Dictionary, 8 Am. & Eng. Enc. L. 832. In this connection, in 3 Cyc. 262, referring to appeals from probate courts, the rule is thus announced:

"The case is to be tried in the appellate court upon the same issues that were presented in the lower court."

It must be kept in mind that the county court was exercising original jurisdiction, while the district court had appellate jurisdiction only. The expression "appellate jurisdiction" refutes the idea of joining new issues in a court of such jurisdiction. *In re McVay's Estate,* 14 Idaho, 56, 93 Pac. 28. We think it clear that according to the Constitution, to the provisions of which we have already directed attention, as well as under the act of June 4, 1908 (Sess. Laws 1907-08, pp. 284, 285), the district court in probate matters had appellate jurisdiction to retry only the same issues of law and fact as were presented to the county court for its determination. If by law the jurisdiction of the two courts were concurrent, and thereby the district court had had original jurisdiction of the appointment of guardians, then it may be that the amendment in such case should have been made. But such, we have seen, is not the law.

Nor do we think our conclusion is affected by either of sections 6514, 6515, 6519, Rev. Laws 1910, for the question here is not one of practice or procedure, but of jurisdiction. In fact, the second of the above-numbered sections expressly provides that the appellate court has the same power to decide the questions of fact which the county court or judge had.

Discussing appeals from probate courts, the rule is announced in 3 Cyc. 262, to be:

"On such appeals the superior court tries the case *de novo* and renders such judgment or makes such order as the probate court should have rendered or made."

In *Cooper, Adm'r, v. Armstrong, Guardian,* 3 Kan. 78, it was held that the district court, on appeal from the probate court, could properly try nothing but what the latter court could try. There the statute provided for a trial *de novo* as here.

In *Matter of Estate of Campau,* 48 Mich. 236, 12 N. W. 217, it was held that in proceedings for the confirmation of an administrator's sale, if appealable from the probate to the circuit court, the issue remains the same, and no new issue can be introduced in the circuit court. In Illinois it appears that the county court, as with us, has original jurisdiction of the settlement of estates. Appeals are prosecuted from such court to the circuit court, where a trial *de novo* is provided.

In *Elder et al. v. Whittemore, Adm'r,* 51 Ill. App. 662, the order of the county court was a final judgment of the only court having original jurisdiction of the matter, upon all the questions that plaintiffs in error saw fit to raise therein. In the circuit court certain amendments were made, and it was said by the Court of Appeals, in passing upon the question:

"But we do not know of any authority or power in the circuit court, purely appellate, to entertain, on appeal, this new and original claim for interest and profits. The trial of what was properly triable in that court was *de novo,* but a new case by amendment of or addition to the exceptions filed in the county court could not properly be made."

Further in the opinion it was said:

"This would have been to do indirectly what the court had no power to do directly—really, to take original jurisdiction in the matter of the settlement of an estate of a deceased person, and the accounts of an administrator, which the Constitution gives to county courts only."

In *Grider, Adm'r, v. Apperson,* 38 Ark. 388, it was held that the circuit court, on appeal from the probate court, tried the case *de novo,* and rendered such judgment or made such order as the probate court should or could have made.

In *Graham v. Burch,* 47 Minn. 171, 49 N. W. 697, 28 Am. St. Rep. 339, the rule was announced that, upon appeal to the district court from an order granting or refusing the probate of a· will, the latter court exercised no original jurisdiction, but only appellate jurisdiction to make such determination as the probate court ought to have made.

In *Mallory's Appeal,* 62 Conn. 218, 25 Atl. 109, the decision was that the superior court, on appeal, took the place of the probate court from which the appeal was prosecuted, and could do no more than could have been done by that court.

It follows, from what has been said, that, the district court not having jurisdiction to appoint Joseph Parker, guardian, the court's action in refusing to do so cannot be assigned as error in this court.

Did the court err in making the order of appointment that it did, and in not appointing the grandfather the child's guardian? Lewis was in no way related to Susie Ann Parker, while John Parker was her paternal grandfather. W. N. Lewis is a member of the bar of this court and, as members of the court know, is a cultured Christian gentleman. He reluctantly undertook to act as guardian of the child at the request of its grandmother. The responsibility was not one of his own seeking. John Parker, the child's grandfather, all of the testimony shows, is a full-blood Chickasaw Indian, a respected citizen, and a successful farmer, the owner of several hundred acres of land, and that he and his children, including Susie Ann's father, are regular church and Sunday school attendants. It appears that in the district court the evidence brought out principally the question of the fitness and competency of the maternal grand-

mother and the paternal grandfather to have the custody of, care for, and look after the child's interests. But the true controversy is not between these two. The county court appointed Lewis, and not Mary Ann Cobb, the child's guardian, so that the question is not one of fitness and competency between two relatives equally entitled to the child's custody, but, as already seen, between a relative on the one hand, and a stranger on the other. Section 3332, Rev. Laws 1910, says that, of two persons equally entitled to the custody in other respects, preference is to be given as follows: First, to a parent; second, one who was indicated by the wishes of a deceased parent; third, to one who already stands in the position of trustee of a fund to be applied to the child's support; fourth, to a relative. Whatever right the father had to the appointment he has expressly relinquished in favor of his father. At the time Joseph Parker lived with his father, John Parker. The evidence shows clearly that the latter was well able to care for and look after the interests of his grandchild, and it may not be unfair to assume that it was due to this fact that the father executed the waiver of his preference right to guardianship. Anyway, as he is not asking to be appointed, the first provision of the section is not before us for construction. As to the second provision, there was introduced a writing signed by Josie Parker, deceased, dated February 11, 1913, some nine days prior to her death, in which she stated:

"I want my mother to take my little girl Susie Ann Parker. If my mother dies before my little girl is of age, I want my brother Jim Alexander to take my little girl and keep her until she is of age."

But we do not understand, and cannot hold, that this provision of the statute gives to a deceased parent the right to designate a guardian where the other parent is living, and in exclusion of his rights. *In re Allen,* 162 Cal. 625, 124 Pac. 239. Such a construction would give to either parent the absolute right to cause to be taken from the possession of the surviving

parent the custody and right to guardianship conferred by other sections of the statute, including sections 3331, 6530, Rev. Laws 1910. The third provisions of the statute has no application to the facts before us. The fourth gives the preference right to a relative. As a matter of right, therefore, Lewis had no claim whatever to the child's custody, or to be appointed its custodian. Speaking of the effect that must be given statutes such as section 3332 it is said in Woerner's American Law of Guardianship, sec. 32: That the discretion of courts in the appointment of guardians of minors is not to be exercised arbitrarily or capriciously, but in conformity with fixed principles of law. That, after the parents, the next of kin are preferred as guardians of children under 14, or of children over 14 who do not determine their guardian by their own choice. Where these preferences are indicated by statute, they cannot be disregarded, but for sufficient reasons appearing to the court. That the appointment of a stranger, where a relative also applies, who is not shown to be unsuitable, is error which will be reversed on appeal.

In *Spaun v. Collins* 10 Smedes & M. (Miss.) 624, it was said by Chief Justice Sharkey that, when it is manifest that the next of kin is in all respects suitable to take the management of the person and estate of the orphan, he has a legal right to be preferred; and if the probate court may, under such circumstances, disregard his claims, the statute is a dead letter. There the contest was between the uncle of the minors and a stranger

In *Allen v. Peete,* 25 Miss. 29, Peete was related by marriage with the minors, but bore to them no relationship of blood. Allen was the children's blood uncle. The statute provided that preference should be given in all cases to the natural guardian or next of kin and it was held that the uncle had the prior right to the guardianship, unless his unsuitableness to take charge of the persons and estates of the orphans was made manifest by the proofs in the case. It was further said that to

hold otherwise would be to render nugatory the provisions of the statute.

In *Albert v. Perry,* 14 N. J. Eq. 540, it was held that the mother, and after the mother the next of kin of an infant, was entitled to be appointed guardian of a minor under 14 years, and such claim could not be disregarded, unless for some satisfactory reason apparent to the court.

As between an uncle and a stranger, in *Morehouse et al. v. Cooke,* 1 Hopk. Ch. (N. Y.) 226, it was said that, other things being equal, the uncle is preferred as guardian.

While the child, its father, and grandfather, as well as its maternal grandmother, are all full-blood Indians, all are shown to be intelligent and highly reputable citizens. It appears that the grandmother is very devoted to the child, whose possession she had since the death of her daughter. The evidence establishes the fact that she has reared and educated several orphan children; and, while neither she nor her present husband are possessed of much means, there is no room for doubt as to her competency, so far as fitness is involved, to act as guardian for her grandchild. However, we are not called upon to decide the relative claims of the grandfather and the grandmother to the guardianship of the minor, but instead that of the grandfather and a stranger. In deciding this quesiton, we are concluded by the terms of the statute. What we have said is in no wise in conflict with the statute which directs that, in the appointment of general guardians, the court should be guided by what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, as announced in *Brigman v. Cheney,* 27 Okla. 510, 112 Pac. 993. In that case the contest for letters of guardianship arose between the child's paternal grandfather and maternal grandmother, each of whom, the proof showed, was a proper person to act as guardian. Nor is the case of *Zink v. Milner,* 39 Okla. 347,

135 Pac. 1, controlling, for the reason that there the controversy over the custody of the child arose between the child's great-aunt and its father, and it was held that, under the statute, the latter was entitled to the child's custody, notwithstanding an effort of the child's deceased mother to give its possession to her aunt. We conclude that John Parker being the child's relative, and a suitable person, was entitled, as against the petitioner, to be appointed her guardian.

The judgment of the lower courts are therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

All the Justices concur.