## In re COPPERFIELD'S ESTATE.
## COPPERFIELD et al. v. SHEDD, Gd'n, et al.

No. 20396. Opinion Filed June 21, 1932.

Gray & Palmer and G. K. Sutherland, for Ralph A. Barney, for plaintiffs in error.

Gray & Palmer, and G. K. Sutherland, for defendants in error.

CULLISON, J. This cause presents a probate matter instituted in the county court, tried therein, appealed to the district court, tried de novo, and appealed to this court. The parties will be referred to as they appeared in the trial court.

The record discloses that Frederick Copperfield deceased, was a resident of Osage county, Okla.; that at the date of his death, he left surviving, four brothers and sisters, two of whom were under guardianship. All of said heirs were of Osage Indian blood. The deceased left considerable estate and application for administration thereon was immediately filed in the county court. A sister. Louise Copperfield Arms, and brother, Walter Copperfield, petitioned the court for the appointment of the Exchange Trust Company of Tulsa, Okla.. as administrator of said estate. Louis Copperfield, a brother, and Henry Pratt, who was designed as a father by adoption, petitioned the county court for the appointment of Fred L. Shedd as administrator. Harry Matles, as guardian of Louis Copperfield and Fred L. Shedd. as guardian of Marguerite Copperfield, petitioned the county court for the appointment of Fred L. Shedd, as administrator. The case was tried by the county court, and at the conclusion of the hearing before the county court, the judge thereof found that it would be to the best interests of all parties to appoint an administrator independently of the nominations of the parties. and appointed C. K. Logan as administrator of said estate.

There was no petition on file requesting the appointment of Logan, and from the order of the county court appointing Logan as administrator, the parties to said cause appealed to the district court.

After said cause was appealed to the district court, Louise Copperfield Arms and Walter Copperfield filed a motion in the district court withdrawing their nomination of the Exchange Trust Company of Tulsa and nominating C. K. Logan, who had been appointed by the county court. Said heirs also filed in the district court. objections to the appointment of Fred L. Shedd as administrator. Counsel for Fred L. Shedd filed a motion requesting that the new pleadings filed in said cause after the case was appealed from the county court to the district court be stricken from the files, which motion was overruled.

The case proceeded to trial, and after testimony was received therein, the court made an order appointing Logan administrator of said estate. Motion for new trial was filed and upon presentation of said motion the court granted a new trial and heard evidence in said cause. and at the conclusion of the second trial appointed Fred L. Shedd administrator of said estate.

In the consideration of this appeal it will be necessary to determine. what issues were properly before the district court in the trial of said cause. The district courts of this state are the courts to which probate appeals are taken from the county court. The county court has original jurisdiction in probate matters. and when a cause is appealed from the county court to the district court, the case is tried de novo, and trial de novo does not mean that new issues may be presented for the first time in the appellate court, but that the case must be tried in the district court upon the issues made by the litigants in the county court. The litigants must state their issues in the county court and such issues as are not raised in the county court cannot be raised by new pleadings in the district court.

This matter has been before this court and passed upon in the case of Parker v. Lewis, 45 Okla. 807, 147 P. 310, at page 311 of the opinion:

"By section 12, art. 7, of the Constitution, the county court, coextensive with the county, is vested with original jurisdiction in all probate matters (Davis, County Judge, v. Caruthers, Dist. Judge, 22 Okla. 327. 97 P. 581). while by section 13, art. 7, the county court is given the general jurisdiction of a probate court, including power to appoint guardians. By section 16 of said article, appeals in probate matters are to be taken from the judgments of the county court to the district court of the county, where the same shall be tried de novo upon questions of both law and fact. Apache State Bank v. Daniels, 32 Okla. 121, 121 P. 237, 40 L. R. A. (N. S.) 901, Ann. Cas. 1914A, 520; Welch v. Barnett. 34 Okla. 166 125 P. 472; Barnett, Guardian, v. Blackstone Coal & Milling Co., 35 Okla. 724, 131 P. 541; In re Theimer, 40 Okla. 235, 137 P. 358. Section 10, art. 7, confers upon the district court such appellate jurisdiction as may be provided by the Constitution or by law. Therefore the county court alone had original jurisdiction of the guardianship proceedings; the district court having only appellate jurisdiction thereof. The amendments made in the district court injected into the case an issue not before the county court; and, while no objection thereto appears to have been made, it is urged here that the application for letters of guardianship of the father not having been before the county court, is not properly before this court.

"While by section 16, art. 7, Constitution, it is provided that, on appeal to the district court in probate matters, the cause shall be tried de novo upon questions of both law and fact, we are not to understand that thereby new and distinct issues may be made for the first time. A trial de novo has a well-defined and generally understood meaning, and does not contemplate the framing of new and different issues in the appellate court. In Ex parte Morales (Tex. Cr. App.) 53 S. W. 107, it was said that a trial de novo on appeal re-

quires that appeals be tried upon the original papers and upon the same issues as had below, and that the term 'de novo' meant 'anew.' 'a second time,' citing Rap. & L. Dictionary, 8 Am. & Eng. Enc. L. 832. In this connection, in 3 Cyc. 262, referring to appeals from probate courts, the rule is thus announced:

" 'The case is to be tried in the appellate court upon the same issues that were presented in the lower court.'

"It must be kept in mind that the county court was exercising original jurisdiction, while the district court had appellate jurisdiction only. The expression 'appellate jurisdiction' refutes the idea of joining new issues in a court of such jurisdiction. In re McVay's Estate, 14 Idaho, 56, 93 P. 28. We think it clear that according to the Constitution, to the provisions of which we have already directed attention, as well as under the Act of June 4, 1908 (Sess. Laws 1907-08. pp. 284, 285), the district court in probate matters had appellate jurisdiction to retry only the same issues of law and fact as were presented to the county court for its determination. If by law the jurisdiction of the two courts was concurrent, and thereby the district court had had original, as well as appellate, jurisdiction of the appointment of guardians then it may be that the amendment in such case should have been made. But such, we have seen, is not the law."

The above holding settles said matter conclusively, and we need not discuss it further.

Our statutes provide who are entitled to letters of administration upon the estate of a deceased person, by section 1141, C. O. S. 1921, which is as follows:

"Administration of the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned and they are respectively, entitled thereto in the following order:

"First. The surviving husband or wife, or some competent person whom he or she may request to have appointed.

"Second. The children.

"Third. The father or mother.

"Fourth. The brothers.

"Fifth. The sisters.

"Sixth. The grandchildren.

"Seventh. The next of kin entitled to share in the distribution of the estate.

"Eighth. The creditors.

"Ninth. Any person legally competent. * * *"

Section 1145 provides that any person under the age of majority is not competent to serve as an administrator of an estate. Section 1144 is as follows:

"If any person entitled to administration is a minor, letters must be granted to his or her guardian, or any other person entitled to letters of administration, in the discretion of the court."

The sections just enumerated are the sections of our statute relative to the appointment of an administrator.

Section 1141, supra, provides who may be appointed and gives their priority as to appointment. Under section 1144, supra, the disability imposed upon a minor under section 1145 is waived in favor of the guardian of said minor, as held by the Supreme Court of California in construing their section 1368, Code Civ. Proc., which is identical with section 1144 of our statutes.

In the case of In re Turner's Estate. 77 P. 144 (2d case), at page 145 of the opinion, the Supreme Court of California held:

"The respondent contends—and the lower court took this view of it—that the purpose of section 1368 is to place the guardian of a minor, and the adult members of the class to which the minor belongs, upon the same footing as to the right to letters of administration, and we are of the opinion that this construction is the proper one. The language of section 1368 is general in its nature. and unrestricted in its terms. It confers a right in behalf of one member of a class; removes his disability to the extent that it confers upon his guardian a right to which, save for his minority, he would be himself entitled; and, in furtherance of that right, and to uphold it, the language of the section should be liberally. rather than restrictively, construed. There is certainly nothing in the wording of the section which tends to restrict its application in the manner insisted on by appellant. Nor do any other sections of the Code on the same general subject warrant it. There is nothing in the terms of section 1365, declaring who are entitled to administer. which gives an adult of any of the classes there mentioned a preference over minors of the same class. The section simply designates by classes, generally, who are entitled to administer and prescribes the preferential order in which the classes are so entitled, but it makes no distinction among members of a class on account of minority. The preference which. in the absence of section 1368, is given to adults, springs from section 1369, which necessarily accords such preference, because by this latter section a minor is declared incompetent and not entitled to serve as administrator. This disqualification is general and absolute in all cases and as to all classes, and. but for section 1368 the minor would have no right in any instance to apply for letters. In fact. he has none now. His personal dis-

qualification remains. He cannot serve, but his guardian, as his representative, may. The object of section 1368 undoubtedly is to remove the disqualification of the minor, and place him, through his guardian in the same category as if the minority did not exist."

In the case at bar, Fred L. Shedd, who was appointed by the district court, was the guardian of Marguerite Copperfield, a minor, and a sister of the deceased, and as such would come within subdivision 5 of section 1141.

In the county court, request was made for the appointment of the Exchange Trust Company of Tulsa, but upon the appeal to the district court a withdrawal of said request was made and said parties requested the appointment of Logan, who had been appointed by the county court without application being made for his appointment.

As we have pointed out previously in this opinion, there is no law for changing the issues after the case is appealed from the county court to the district court, and in reality the only valid application before the district court was Fred L. Shedd, guardian of Marguerite Copperfield, a sister of said deceased.

Under the interpretation of section 1144, the guardian of Marguerite Copperfield has the same right to be appointed administrator of the said estate as Marguerite Copperfield would have had, had she been of age, and since an application of Fred L. Shedd was the only valid application before said court, and he possessed certain prior rights to appointment. the trial court did not err in appointing said administrator.

Plaintiffs in error contend that Fred L. Shedd was incompetent to serve as administrator of the estate of said deceased because he, as guardian of said deceased, had made certain investment in life insurance which was contrary to law, and that said life insurance should be collected and turned into the estate of said deceased.

The facts are that Shedd, as guardian of said deceased, purchased certain life insurance to wit, a policy of $10,000. That the premiums thereon were $455.80 per year. Said policy was made in favor of Marguerite Copperfield, the other ward of Fred L. Shedd. Upon the death of Frederick Copperfield, said $10,000 insurance policy was collected by Fred L. Shedd as guardian of Marguerite Copperfield.

Plaintiffs in error contend that this expenditure was contrary to chapter 84, S. L. 1924. wherein the Legislature provided the manner and mode of investing funds belong-

ing to estates of minors and incompetent persons, and the record further shows that immediately after C. K. Logan was appointed administrator of the estate of Frederick Copperfield, defendant in the county court, C. K. Logan. as such administrator, instituted suit in the district court seeking to recover the $10,000 of money collected on said insurance policy for the estate of Frederick Copperfield, deceased.

They further contend that, since it would be a duty of Fred L. Shedd, guardian of Marguerite Copperfield to defend against such a suit, he was an incompetent person to serve as administrator of the estate of Frederick Copperfield, deceased. We find nothing in the statute imposing such a disability.

We observe that the payment of money sought to be questioned by plaintiffs in error is a matter that occurred in the guardianship of the estate of Frederick Copperfield while under guardianship of Fred L. Shedd, and that if there were any irregularities in the expenditure of the funds belonging to said ward, said guardian and his bond are liable in the guardianship case therefor, and the matter need not be considered in this case.

We further observe that Walter Copperfield and Louise Copperfield Arms waived their right to be appointed administrators of said estate. in the county court, and requested the appointment of the Exchange Trust Company of Tulsa as such administrator; that after said case was appealed to the district court, said heirs withdrew their nomination of the Exchange Trust Company and sought to nominate C. K. Logan, who had been appointed by the county court without any petition for his appointment.

Both of said heirs had waived their right to appointment and could not be considered by the trial court in the matter of appointing an administrator.

Under section 1141, Shedd came in class 5 of those entitled to appointment as administrator, while Logan. if legally before the court, would come in class 9 of those entitled to appointment as said administrator. Shedd being entitled to preference under the statute, and the statutes imposing no specific disability against him, we do not see how the district court could have held otherwise than it held in appointing Shedd administrator of said estate.

After a careful consideration of the case at bar and the authorities cited in support of the contentions of both sides to said ap-

peal, we hold that the judgment of the trial court should be affirmed.

RILEY, HEFNER, McNEILL, and KOR-NEGAY, JJ., concur. SWINDALL, J., not participating. LESTER, C. J., CLARK, V. C. J., and ANDREWS, J., absent.