# Commonwealth v. West Penn Power Company

*M. Clyde Sheaffer*, for appellant.

*Frank A. Sinon* and *Carl A. Chronister*, Deputy Attorneys General, and *James H. Duff*, Attorney General, for Commonwealth.

WOODSIDE, J., April 10, 1943.—This comes before us on appeal from the resettlement of defendant's gross receipts tax [1] for the six months ending June 30, 1936.

The tax in question was originally settled by the Department of Revenue on September 17, 1936, and was approved by the Department of the Auditor General on September 23, 1936, in the amount of $137,-116.96, based upon gross receipts of $9,794,068.53.

Under the provision of section 1105 of The Fiscal Code of April 9, 1929, P. L. 343, in effect at that time, the department which made the settlement could request the Board of Finance and Revenue to authorize a resettlement within one year after the date of the settlement.

On February 2, 1937, within a year from the date of settlement, section 1105 of The Fiscal Code of April 9, 1929, P. L. 343, was amended [2] by striking out what

---

[1] Section 23 of the Act of June 1, 1889, P. L. 420, as amended by Act of April 25, 1929, P. L. 662, 72 PS §2181.

[2] Act of February 2, 1937, P. L. 3, 72 PS §1105.

appears below in brackets, and adding thereto what is below italicized..

"Authorization of Resettlement Upon Petition of the Department Which Made the Settlement.—Within [one year] *two years* after the date of any settlement, or resettlement made subsequent to June first, one thousand nine hundred and twenty-nine, except such as have been appealed from, the department which made the settlement may, by petition, request the Board of Finance and Revenue to authorize a resettlement thereof, [upon the ground that it appears, from the accounts or other information in the department's possession, that the settlement or resettlement was erroneously or illegally made] and the Board of Finance and Revenue may grant the prayer of such petition and permit a resettlement to be made."

Upon request by the Department of Revenue, with the approval of the Department of Auditor General, the Board of Finance and Revenue authorized the resettlement of the petitioner's gross receipts tax, which was done by the Department of Revenue on November 9, 1937, and approved by the Department of Auditor General on November 17, 1937. It is to be noted that this was more than one but less than two years from the date of settlement.

As a result of this resettlement defendant's gross receipts tax was measured by gross receipts on the amount of $11,089,304.49 at the rate of 20 mills. The rate of tax being incorrect, the Department of Revenue, with the approval of the Department of Auditor General, again requested the Board of Finance and Revenue to authorize it to resettle the tax, which was done, using the same gross receipts measurement, by imposing the tax at the rate of 14 mills, making a tax of $155,250.26.

A petition for review was filed from this action of the Department of Revenue and the Department of Auditor General with the Board of Finance and Revenue, and on February 24, 1938, the board denied the

petition for review and refused to further resettle defendant's tax.

An appeal was then taken to this court, where by stipulation of the parties it was heard without a jury, under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688 et seq.

Upon the resettlement the gross receipts upon which the tax was measured were increased by $1,295,235.96. This sum was composed of three items which defendant claims are not taxable as gross receipts, and are made up as follows:

1. $386,155.16—Reimbursement to defendant from sales of electrical appliances, merchandise, and supplies to the West Penn Appliance Company during the six months ended June 30, 1936.

2. $483,150.44—Representing receipts from sales of current to The Monongahela West Penn Public Service Company.

3. $425,930.36—Representing receipts from sales of electrical energy to municipalities in Pennsylvania, not for the purpose of resale.

At the trial the Commonwealth claimed additional tax on the following items of gross receipts alleged to have been received by defendant during the six months ended June 30, 1936:

4. $98,873.80—Representing receipts from sales of current, under an interchange agreement, to the Duquesne Light Company, Pennsylvania Electric Company, Pennsylvania State College, and Potomac Edison Company.

5. $4,795.47—Representing receipts from sales of lamps and wire in Pennsylvania to nonresidents of Pennsylvania.

6. $1,226.93—Representing charges for services rendered in Pennsylvania to nonresidents of Pennsylvania.

The Commonwealth, however, after investigation of defendant's activities, has withdrawn its claim for tax upon item 2 above, representing receipts from sales of

current to the Monongahela West Penn Public Service Company.

Before considering whether the particular items in controversy are taxable gross receipts we have two preliminary questions to determine.

1. Did the Commonwealth have authority to resettle the gross receipts tax in question more than one year but less than two years after it had been settled when the law at the settlement date limited the time to one year from the date of settlement, but before that year had expired the law was amended to provide that settlement could be made within two years?

2. Can the Commonwealth at a hearing on an appeal before this court include additional items of gross receipts for tax purposes when those items were not claimed as taxable when the settlement, resettlement, and order of the Board of Finance and Revenue were made?

### 1.

We are of the opinion that a resettlement could be made more than one year from the date of settlement under the circumstances of this case. Ordinarily the statute of limitations does not run against the Commonwealth: McKeehan v. Commonwealth, 3 Pa. 151 (1846) ; Bailey's Estate, 241 Pa. 230.

The legislature provided an exception to this general rule in section 1105 of The Fiscal Code of April 9, 1929, P. L. 343.

At a time when the Commonwealth still had the right to resettle the tax of defendant, it extended the time when it could resettle for a period of one additional year. This it had the right to do. The gross receipts tax was imposed by the Act of 1889. The procedure to collect it is set forth in The Fiscal Code. The language of this section, as well as that contained in section 2 of the act relating to its general scope, indicates clearly that it is a procedural code. In section 2 we find that "This act is not intended to change the incidence

or amount of any existing tax . . . or to impose any new tax."

It was not the substantive law, to wit, the Act of 1889, but the procedural code which was amended.

Statutes of limitation are primarily concerned with the remedies rather than substantive rights. Thus they have been held not to violate any obligation of contract in either shortening or enlarging the time within which actions may be brought for the enforcement of rights under preëxisting contracts: Bakersfield Home Building Co. v. J. K. McAlpine Land & Development Co., 26 Cal. App. (2d) 444 (1938), 79 P. (2d) 410.

"A person has no vested right in the running of a statute of limitations unless it has completely run and barred the action": Davis & McMillan v. Industrial Accident Commission, 246 Pac. 1046, 1047 (1926). Parties do not have any vested interest in particular limitation laws existing at any special time: 17 R. C. L. 681.

"The general rule of construction is that statutes, *other than those affecting procedural matters*, must be construed prospectively except where the legislative intent that they shall act retrospectively is so clear as to preclude all question as to the intention of the legislature" (italics supplied) : Farmers National Bank & Trust Co. of Reading v. Berks County Real Estate Co. et al., 333 Pa. 390, 393 (1939) ; Commonwealth v. The Curtis Publishing Co., 50 Dauph. 99 (1940).

The precise question of extending the limitations of actions was raised by an amendment made to The Workmen's Compensation Act extending the statute of limitations from one to two years. In the case of Seneca v. Yale & Towne Mfg. Co. et al., 142 Pa. Superior Ct. 470 (1941), the facts were as follows: Claimant had sustained an injury on August 7, 1937. Under the provisions of The Workmen's Compensation Act in effect at that time, the cause of action arose and became complete with the happening of the accident, and

all claims were forever barred unless made within one year after the accident.

Prior to the expiration of the year the Act of June 4, 1937, P. L. 1552, extended the period within which claimant's petition could be filed from one year to two years after the accident. The claimant filed his petition on September 2, 1938, more than one year but less than two years from the date of the accident. The Superior Court held that the amendment did not relate to or affect the substantive rights and obligations of the parties but only the procedure for their enforcement.

Judge Cunningham, speaking for the court, there said (p. 474) :

"Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage. *Kille v. Reading Iron Works*, 134 Pa. 225, 227; *Lane v. White*, 140 Pa. 99, 101; *Laukhauff's Est.*, 39 Pa. Superior Ct. 117, 119; *Long's App.*, 87 Pa. 114.

"It is true there was no litigation actually pending in the case at bar on the date upon which the amendment became effective, but on that date claimant had a full and complete right of action and the period within which he was required to assert it, under the legislation in force at the time of the injury, had not expired."

Defendant contends that the amendment of 1937 to section 1105 is more than remedial because it struck from the section the words "upon the ground that it appears from the accounts or other information in the Department's possession, that the settlement or resettlement was erroneously or illegally made." It is argued that the removal of these words from the section permits a resettlement without stating the reasons therefor, and removes the necessity for showing that

the settlement or resettlement was erroneously or illegally made. If the contention of the Commonwealth relative to the items resettled in this case is correct and items included as taxable gross receipts in the settlement are taxable, then, of course, the original settlement was erroneously and illegally made. This is so elementary that there could be no reason to advise defendant that a resettlement is to be made because the original settlement was erroneous or illegal.

We suggest that possibly defendant missed the import of the words stricken from the section and the reason for the amendment. It might be that the important words were, "information in the Department's possession" and not "erroneously or illegally made". We do not see how the removal of these words made by the amendment can make it more than a procedural matter.

It is further contended by defendant that it has always been the practice of the department to apply "all taxing statutes" from the effective date of the act, and reference is made to changes contained in the law relating to interest. The practice of the department in these matters does not help us to arrive at the proper rule in this case.

It is further contended that "if the Commonwealth of Pennsylvania had the right to resettle the account more than one year after the date of approval of the original settlement, then the Commonwealth would in effect be reviving an extinguished lien and increasing the same". We can see no merit to this contention. The gross receipts tax is a lien from the date of settlement on the real estate of defendant. Any purchaser had notice that a resettlement could be made by the department within one year. If it could have been made within one year, and prior to the time that the year has expired that period is extended to two years, no purchaser of the real estate of defendant could be harmed.

For the reasons set forth above we are of the opinion that the Commonwealth had authority to resettle the tax in this case at the time it did so.

## 2.

Certain claims for tax not contained in the settlement, resettlement, or order of the Board of Finance and Revenue, and not included in the specifications of objections, were made by the Commonwealth at the hearing before this court.

Section 1104 of The Fiscal Code provides that hearings before this court shall be de novo. "De novo" means the trial of the entire case anew,[3] but there is an implication it was once heard,[4] and it does not contemplate the framing of new and different issues: Parker v. Lewis, 45 Okla. 807, 147 Pac. 310, and In re Bruner's Guardianship, 111 Okla. 93.

The Fiscal Code provides that it is the duty of the Department of Revenue to settle and collect all taxes, and the duty of the Department of the Auditor General to audit all accounts for taxes. The settlement and collection of the Commonwealth's taxes are primarily an administrative matter and not a judicial matter. The judicial function is not to consider all phases of the settlement but only those which are raised by the appeal.

It is a well-settled principle of law that the issues before the court are those raised in the pleadings. In tax cases the settlement, as amended by any resettlement or order of the Board of Finance and Revenue is in a sense the Commonwealth's statement of claim.

Section 1104 of The Fiscal Code provides: "Appeals taken hereunder shall be hearings de novo, but no facts shall be admitted in evidence that were not brought to

---

[3] Bardwell v. Riverside Oil & Refining Co., 139 Okla. 26, 280 Pac. 1083, 1085; Morton Salt Co. v. Wells, (Texas) 35 S. W. (2d) 454.

[4] Collier v. Carter, 100 Md. 381, 60 Atl. 104.

the attention of the department making the settlement, or in the application for resettlement, or petition for review prior to the appeal, and set forth in the specification of objections contained in the affidavit, . . . and no questions shall be raised which are not included in the specification of objections filed as hereinbefore provided."

The Commonwealth is advised of the issues which it must meet by the specification of objections and "no questions shall be raised which are not included in the specification of objections and no fact shall be admitted which was not brought to the attention of the department, etc."

The act is clear and specific as to the issues which can be raised by defendant on appeal. No reference is made to the right of the Commonwealth to raise any new issues. The Commonwealth now contends that the absence of any such provision indicates the intent of the legislature to permit it to raise new issues on appeal. We think no reference is made to such right in the act because the legislature did not contemplate the Commonwealth raising any new issues by making additional claims at the time of the hearing before the court and did not intend that the Commonwealth should have such right. We must remember *that it is the action of the Commonwealth itself from which the defendant appeals.*

Both parties are informed before the hearing what the issues are by the specifications of objections. The issues should be known before hearing. The testimony should not make the issues. Defendant can raise no new issues. If the Commonwealth were permitted to raise new issues at the time of the hearing, no taxpayer could fully prepare his case on appeal, for he would not know what issues he might be forced to meet. We believe that to permit new issues to be raised at the hearing would be such poor practice that the legislature could not have intended it.

It is true that the court can increase a tax as it did in the case of Commonwealth v. Pomeroy's, Inc., 50 Dauph. 139 (1940), but this was done not by raising new issues, but by the determination of an issue raised in the specification of objections, to wit, the valuation of property. If in the determination of the issue raised the court concludes that the tax is greater than that which was assessed by the Commonwealth, we have the authority so to find in our order.

If the additional tax claimed by the Commonwealth at the hearing is based upon issues which are an integral part of the appeal or incidental thereto, they may be considered by the court, but when a new item of taxable receipts raising a new issue is presented by the Commonwealth at the hearing before the court, for the first time, we are of the opinion that it should not be considered.

When the Commonwealth attempted to introduce the testimony concerning items 4, 5, and 6 as set forth above, defendant objected to testimony on items of gross receipts not covered by the specification of objections. The court admitted the testimony subject to the objection of defendant. For the reasons set forth above we are of the opinion that the objection should be sustained and now so rule, noting an exception for the Commonwealth.

Having thus determined that we should not consider items 4, 5, and 6, and the Commonwealth having withdrawn its claim to item 2, we have left for determination only items 1 and 3, which we shall deal with in order.

In the resettlement the Commonwealth assessed as taxable gross receipts $386,155.16, which defendant received from the West Penn Appliance Company, a subsidiary wholly owned by defendant, for electrical appliances, merchandise, and supplies purchased by defendant and delivered to the appliance company.

Electrical appliances and merchandise were purchased by a common purchasing agent who functioned

for defendant, the West Penn Power Appliance Company, and other of the West Penn group of companies having headquarters in Pittsburgh. The purchasing agent could get better prices and better terms by purchasing the said appliances and merchandise for the West Penn Power Company than if they had been purchased for the West Penn Appliance Company. The merchandise was therefore shipped to the power company, billed to the power company and paid for by it, and was carried on its inventory. When the appliance company sold a particular piece of merchandise to the public it billed the purchaser and withdrew the merchandise from the stock and paid to the power company for it the cost of the merchandise at the time it was purchased. The appliance company also paid interest to defendant on the balance carried on the inventory account at the end of each month, which amounted to $6,076.34 for the six months ended June 30, 1936. In addition, defendant charged the appliance company for all storage charges, overhead expenses, etc., in connection with the handling of this merchandise in the total amount of $38,615.52.

Under section 23 of the Act of June 1, 1889, P. L. 420, electric light companies were held to be liable for tax upon the gross receipts from their business including those received from sales of electric supplies such as lamps, drop-lights, and fans: Commonwealth v. Brush Electric Light Co., 204 Pa. 249 (1903).

The said section which then read:

"Every electric light company . . . shall pay . . . a tax . . . upon the gross receipts . . . received from business of electric light companies"; was amended by the Act of April 25, 1929, P. L. 662, to read:

"Every . . . electric light company . . . shall pay . . . a tax . . . upon the gross receipts . . . received from . . . electric light and power . . . business."

In Commonwealth v. Philadelphia Electric Co., 36 Dauph. 265, 271, it was held that the tax was still upon

"business of electric light companies" and this court in so deciding, speaking through President Judge Hargest, said:

"The promotion of the use of electrical fixtures and utensils certainly stimulates the electric lighting and power business. Therefore, the sale of lamps, lighting fixtures, electric sweepers, vacuum cleaners and cooking utensils stimulates the business. The electric lighting business cannot be transacted without wire, sockets, plugs, fuses and switches. These articles are inseparably connected with the business. Can it be said that merely because the company sold them it is a merchandising transaction and that they are not naturally an incidental part of the business? We think not."

The Supreme Court in the same case said:

"We, therefore, conclude that the court below was correct in holding that receipts derived . . . from the sale of lamps, wire, sockets, etc. . . . are subject to the tax": Commonwealth v. Philadelphia Electric Co., 312 Pa. 528, 530 (1933).

It therefore seems settled that if the merchandise which was purchased by the West Penn Power Company had been sold to the public the gross receipts realized therefrom would be subject to the tax.

It is contended by defendant, however, that since it made no profit on the sale of this merchandise and did not hold itself out to the public as dealing in it but disposed of all of it to one customer, to wit, its subsidiary appliance company, the receipts realized therefrom were not realized "from electric light and power business" and are not taxable. With this contention we cannot agree.

In our opinion defendant sold the merchandise to the appliance company. This was part of its business. That it made no profit on the sale is immaterial. The sum which the appliance company paid for the merchandise was determined by the sum which defendant paid for the merchandise, plus handling, storage, and

overhead charges and the interest on the money invested.

In Commonwealth v. Philadelphia Electric Co., 52 Dauph. 269 (1942), the Philadelphia Electric Company supplied another company with electric current for resale and the sum so realized was held to be a taxable receipt. Here defendant company supplied another company with electrical appliances for resale. In our opinion the sum of $386,155.16 received by defendant for the aforesaid appliances was properly included as taxable gross receipts.

In the resettlement the Commonwealth assessed as taxable gross receipts $425,930.36 from sales of electric energy to municipalities in Pennsylvania.

Defendant contends that these receipts are not taxable because receipts from the sale of electric energy to United States Government are not taxable,[5] and that "this same principle should and does apply in the case of sales to political subdivisions of the Commonwealth of Pennsylvania, and that it is not the legal intent nor meaning of the legislature to impose a Pennsylvania tax upon current sold to political subdivisions."

The State may tax subordinate governmental agencies in matters affecting the performance of their governmental duties, but the presumption is that this was not intended by a taxing act: Commonwealth v. Pure Oil Co. et al., 303 Pa. 112 (1931). In that case the court held that the City of Philadelphia need not pay the liquid fuels tax on gasoline purchased by and consumed by it in the performance of its governmental functions. The court there said: "Much of the Commonwealth's argument is based on the proposition that this is an excise tax and not a tax on property. The court below held it was the latter, and with its conclusion we agree."

The gross receipts tax is a privilege or franchise tax upon defendant and not a property tax: Commonwealth v. Philadelphia Electric Co., 36 Dauph. 339. This court

---

[5] Commonwealth v. Philadelphia Electric Co., 36 Dauph. 274.

therefore held (Commonwealth v. Philadelphia Electric Co., 52 Dauph. 269) that receipts from sales of electricity to a National bank were taxable because no tax was imposed upon the bank and that any effect upon the bank would be indirect and consequential.

It is to be noted that in the Act of May 16, 1935, P. L. 200, the legislature in amending section 23 of the Act of 1889 provided that:

"This Act shall be construed to apply to municipalities, and to impose a tax upon the gross receipts derived from any municipally owned and operated public utility."

The gross receipts tax was thus directly imposed upon municipalities which owned and operated public utilities.

We conclude that receipts from the sales of current to municipalities may be included in taxable gross receipts.

We have acted upon the requests of both parties for findings of fact and directed that they be filed of record. Those which we have affirmed we adopted as the findings of this court.

We have made our own following

*Conclusions of law* [6]

1. The amendment to section 1105 of The Fiscal Code made by the Act of February 2, 1937, P. L. 3, au-

---

[6] All the conclusions of law which we consider necessary for the proper determination of this case have been adopted by us and included in this opinion.

We have not specifically acted upon each of the requests for conclusions of law made by the Commonwealth and by the defendant in this case. Many of these requests we consider to be unnecessary and immaterial, others are contained in the above with different phraseology, and still others could not be properly affirmed or refused without explanation.

We feel that we have sufficiently explained our position in the opinion and that our conclusions of law are sufficient to protect the parties in perfecting any appeal which they may desire to take.

thorized a resettlement within two years after the date of any settlement not appealed from providing the original settlement was made within one year from the effective date of the amendment.

2. Legislation changing a statute of limitations concerns merely the mode of procedure and is applied to cases where the Commonwealth has a right of action and the period within which it was required to assert it under the legislation in force at the time the right arose had not expired.

3. Striking out of section 1105 the words "upon the ground that it appears, from the accounts or other information in the department's possession, that the settlement or resettlement was erroneously or illegally made" by the Act of February 2, 1937, P. L. 3, is no more than procedural legislation.

4. The Commonwealth at a hearing on appeal before this court cannot introduce evidence of an additional item of tax or assert its claim for such item, if such item was not claimed as taxable when the settlement, resettlement, and order of the Board of Finance and Revenue were made, and is not contained in the specification of objections.

5. If the tax claimed by the Commonwealth for the first time at a hearing before this court were an integral part of the appeal or incidental thereto, it could be considered by this court, but items 4, 5, and 6 were not such but were new items of taxable receipts raising new issues and therefore should not be considered by this court.

6. The gross receipts tax imposed upon electric light companies by the Act of June 1, 1889, P. L. 420, as amended, is upon the business of electric light companies.

7. Funds received from a wholly-owned subsidiary for electrical appliances purchased by an electric light company and delivered by it to the subsidiary at cost,

plus handling and storage expenses and interest on the investment, for resale by the subsidiary to the public represent receipts received from the business of electric light companies and are taxable as such.

8. That the electric light company does not make any profit on the said merchandise, disposes of all of it to only one customer, a subsidiary appliance company, and does not hold itself out to the public as a dealer in electrical appliances, is immaterial to its liability for tax upon the receipts received from the subsidiary for such appliances.

9. Receipts received by an electric light company from sales of electric energy to municipalities in Pennsylvania are taxable by the Act of June 1, 1889, P. L. 420, as amended.

10. The gross receipts tax is a privilege or franchise tax upon the electric light company, and not a property tax upon the municipality.

Judgment should be entered as follows:

| | |
|---|---:|
| Amount of gross receipts contained in last settlement (includes items 1, 2, 3 in dispute) ............... | $11,089,304.49 |
| Admitted by Commonwealth not to be taxable (item 22) .............. | 483,150.44 |
| | $10,606,154.05 |
| Tax at the rate of 14 mills .......... | 148,486.16 |
| Tax admitted and paid by company ... | 137,116.96 |
| | $11,369.20 |

Attorney General's commission on above which represents tax in dispute decided v. Commonwealth (items 1 & 3) 5% on $10,000.00 .. $500.00 
 1% on $1 369.20 .. 13.69

| | |
|---|---:|
| | 513.69 |
| Interest on $11,369.20 from November 23, 1936, to April 9, 1943 ...... | 4,347.08 |
| | $16,229.97 |

282

And now, to wit, April 10, 1943, judgment is hereby directed to be entered in favor of the Commonwealth of Pennsylvania and against defendant, in the sum of $16,229.97, and unless exceptions are filed within 30 days from this date judgment shall become final.