Sara SENTER, Plaintiff in Error,

v.

Leeminier SENTER, as Executor of the Estate of Lee M. Senter, Deceased, Defendant in Error.

No. 40945.

Supreme Court of Oklahoma.

July 5, 1966.

Rehearing Denied Oct. 18, 1966.

Charles Hill Johns, Gomer Smith, Jr., Oklahoma City, Smith, Johns & Neuffer, Oklahoma City, of counsel, J. Carpenter Hughes, Hobart, Hughes & Hughes, Hobart, of counsel, for plaintiff in error.

Max Carder, Hobart, for defendant in error.

PER CURIAM.

Lee M. Senter, a resident of Kiowa County, Oklahoma, died on June 11, 1957, survived by his wife Sara, plaintiff in error herein, and his son by a previous marriage, Leeminier, the defendant in error. Prior to Lee's marriage to Sara on January 15, 1954, they had entered into an antenuptial agreement dated January 8, 1954, by which each renounced any claim against the property of the other, except as provided in the agreement. The agreement required Lee to transfer a $1,000 United States Government Bond to Sara each year during their marriage, and Sara was also to receive all household goods owned by Lee at his death. The agreement specifically recited that all other property owned by Lee could be conveyed, "by will or otherwise," to his son Leeminier.

The will of Lee M. Senter was thereafter admitted to probate by the county court of Kiowa County, Leeminier was appointed executor and the estate was administered. Although this will does not appear in the record on appeal, its effect was apparently to leave the entire estate to Leeminier.

When Leeminier filed his petition as executor for distribution of the estate according to the terms of this will, Sara filed a pleading entitled "Rejection of Terms of Will and Election to Take Under the Laws of Succession, Descent and Distribution." This pleading made no reference to the antenuptial agreement described earlier.

The executor then filed a "Petition of Executor to Set Aside Election of Surviving Spouse," in which he alleged the existence of the antenuptial agreement and attached a copy to his pleading. He further alleged that by this agreement Sara had waived her right to inherit from her husband under the law of intestate succession and was entitled to receive only that property contemplated by the terms of the antenuptial agreement.

After a trial was had in the county court at which Sara appeared in person and by counsel, on April 30, 1958, the county court entered a final decree and order for distribution upholding the antenuptial agreement and finding and decreeing that Leeminier Senter was entitled to all of his father's estate. The court specifically found that the agreement had been properly executed prior to the marriage between Lee and Sara, that the provision made for Sara by the agreement was reasonable and adequate under the circumstances and was not grossly disproportionate to the interest which she would have acquired by operation of law, that there was no evidence of fraud, deceit, coercion or undue influence in obtaining the execution of the agree-

ment, and that there had been compliance with the provision of the agreement for the purchase and transfer to Sara of United States Government Bonds.

Sara then perfected an appeal to the district court on questions of both fact and law, pursuant to 58 O.S.1961, § 725. There was no specification of any grounds for the appeal other than the somewhat terse phrases, "on questions of law" and "on questions of fact." The cause thereafter came on for trial de novo by the district court on questions of both law and fact, as prescribed by the applicable constitutional and statutory provisions, Okl.Const. Art. 7, § 16; 58 O.S.1961, §§ 733, 735; and 20 O.S.1961, § 275. At this trial it was contended on behalf of Sara that about two weeks before his death, Lee M. Senter had revoked the antenuptial agreement, with Sara's consent, evidencing this mutual revocation by tearing up an executed copy of the agreement which was in their house. However, from the record on appeal, it appears that the contention that the antenuptial agreement had been revoked was not made in the county court. The findings by the county court embodied in the decree from which the appeal was taken and summarized earlier herein relate solely to the validity of the agreement and contain no reference to its possible revocation.

On May 7, 1958, the district court rendered a judgment upholding the validity of the antenuptial agreement and holding on the basis of the evidence offered that the agreement had not been "legally and effectively revoked by the parties." Sara's motion for new trial was timely filed, but was not overruled until October 2, 1963.

The briefs of the parties are almost exclusively directed to the question of the sufficiency of the evidence before the district court to support its finding and judgment holding that there had been no revocation of the antenuptial agreement. Plaintiff in error concedes that the agreement was valid and binding, but insists that the district court should have found that it had been cancelled and terminated by mutual agreement between Lee and Sara prior to Lee's death. Defendant in error replies that the district court's judgment is supported by ample evidence. However, for the reasons hereafter discussed, we do not reach this question.

It was decided by this Court over fifty years ago in Parker v. Lewis, 45 Okl. 807, 811, 147 P. 310, 311–312 (1915), that although the prescribed method of appeal from the decision of a county court in probate matters is by trial de novo in the district court, the district court can "retry only the same issues of law and fact as were presented to the county court for its determination." The Parker case involved a father who had not requested appointment as guardian of his minor child in the county court but sought this in the district court upon appeal. It was held that the district court would have had no jurisdiction to make this appointment.

In Secrest v. Secrest, 146 Okl. 235, 294 P. 91 (1930), it was held that the district court on appeal had no jurisdiction to permit a protestant against the appointment of an executor to raise the issue of the executor's integrity for the first time in the district court. It was there stated (146 Okl. at 236, 294 P. at 92):

"* * * The trial on appeal was, of course, de novo. Additional evidence might have been introduced if pertinent to the issues as raised in the county court, but it was without authority to permit the pleadings to be amended injecting new issues into the case and hear evidence on such issues.

* * * * * *

"Appellant's integrity was not assailed in the county court by either pleadings or evidence, and under the authorities above cited [Parker v. Lewis, supra, and In re Talomase's Estate, infra], the district court on appeal had no authority or jurisdiction to permit such issues to be injected into the case. * * *"

In re Talomase's Estate, 98 Okl. 212, 225 P. 156 (1924), held that a guardian and his attorneys could not be allowed compensation

for their services when this was requested for the first time upon trial de novo in the district court.

This rule was also succinctly stated in In re Copperfield's Estate, 158 Okl. 40, 12 P.2d 490, 491–492 (1932), as follows:

"* * * The district courts of this state are the courts to which probate appeals are taken from the county court. The county court had original jurisdiction in probate matters, and, when a cause is appealed from the county court to the district court, the case is tried de novo, and trial de novo does not mean that new issues may be presented for the first time in the appellate court, but that the case must be tried in the district court upon the issues made by the litigants in the county court. The litigants must state their issues in the county court, and such issues as are not raised in the county court cannot be raised by new pleadings in the district court."

The same rule is also laid down in Cook v. Morrison, 202 Okl. 693, 697, 217 P.2d 810, 813 (1950); In re Hicks' Estate, 189 Okl. 310, 314, 116 P.2d 905, 909 (1941); Taliaferro v. Reirdon, 186 Okl. 605, 607, 99 P.2d 494, 495 (1940); In re Barrett's Estate, 181 Okl. 262, 263, 72 P.2d 482, 483 (1937); and In re McGannon's Estate, 50 Okl. 288, 294–295, 150 P. 1109, 1111 (1915); cf. In re Van Duyne's Estate, 205 Okl. 440, 445–446, 239 P.2d 387, 393 (1951).

The policy limiting review by trial de novo to the issues presented in the county court is well founded. It has always been regarded as contrary to the elementary principles of sound judicial administration to allow a party to withhold or conceal essential evidentiary or legal elements of his case, for strategic or other reasons, from the court which has been granted original jurisdiction of the matter, and then raise them for the first time on appeal. 4 C.J.S. Appeal and Error § 228. Indeed, this has now been carried to the point where by statute in ordinary civil matters the trial court must always be afforded the opportunity of correcting its own errors by granting a new trial before the errors complained of can be made the subject of an appeal to this Court. 12 O.S.1965 Supp., § 651; Poafpybitty v. Skelly Oil Co., Okl., 394 P.2d 515 (1964); Stokes v. State, Okl., 410 P.2d 59 (1965); Swanson v. Zamrzla, Okl., 414 P.2d 287 (1966).

In the case of probate matters, the framers of the Oklahoma Constitution determined many years ago that the desirability of affording an opportunity to retry probate matters on appeal in district court outweighed the disadvantages represented by the unavoidable expenditure of additional time, effort and expense, and the danger that a party might be tempted to improperly "improve" the quality of his evidence the second time around. Okla.Const. Art. 7, § 16. Although the legislature was authorized by that constitutional provision to adopt a different procedure for probate appeals, it has not done so.

A valid question might be raised today with respect to the necessity for, and desireability of, review by trial de novo in probate cases, which results in two separate trials before courts of record on the same issues. But in any event, a party has never been permitted to raise issues on appeal by trial de novo in district court which could have been, but were not, raised upon the initial trial in county court. Even though additional evidence may be presented, it must be limited to the specific issues which were in dispute in the county court.

■ It is apparent from the final decree and order for distribution entered by the county court here that the issues before it relating to the antenuptial agreement had reference only to the agreement's validity, although the question of its revocation could have been raised at that time. See In re Rettenmeyer's Estate, Okl., 345 P.2d 872, 878 (1959). Therefore, under the same authorities, the issue of alleged revocation of the agreement was waived and could not be raised on appeal. On appeal to the district court from the county court in probate proceedings, the district court must try the matter de novo on the issues as they appear

from the record in county court, and if the issues are not clear from such record, it is the obligation of the party desiring to prosecute an appeal to request the county court to settle and frame the issues to conform to the judgment rendered. 58 O.S.1961, §§ 709, 733; In re Dixon's Estate, 186 Okl. 308, 97 P.2d 559 (1939).

█ It is true that the defendant in error did not formally object to the raising of the issue of an alleged revocation of the antenuptial agreement either in the district court or by his brief on appeal. He did, however, question the admissibility of the evidence offered to prove the alleged revocation, and his brief here does refer to the fact that this question had not been presented to the county court. Nevertheless, the failure of the defendant in error to raise the question of the jurisdiction of the district court to consider an issue not before the county court cannot confer such jurisdiction on the district court or on this Court on appeal. Wise v. Cutchall, 171 Okl. 60, 63, 41 P.2d 864, 868 (1935); Parker v. Lewis, 45 Okl. 807, 810, 147 P. 310, 311 (1915); cf. Davis v. Sandlin, Okl., 392 P.2d 722 (1964); In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933 (1947).

The plaintiff in error here concedes that the antenuptial agreement was valid and binding, and argues only that the district court's finding that the agreement had not been effectively revoked is erroneous. Under the authorities discussed earlier, the district court had no jurisdiction on appeal to consider this issue, since it had not been presented to the county court. This leaves the plaintiff in error with no issue of which she may complain here.

█ The effect of the judgment of the district court on appeal was to affirm the judgment of the county court ordering distribution in accordance with the will and the antenuptial agreement, although the district court did rule on a matter over which we have determined it had no jurisdiction. Nevertheless, the judgment of a trial court will be affirmed on appeal if it is correct, even though the basis stated for its decision

may be erroneous. English v. Rainwater, Okl., 403 P.2d 449 (1965); Davis v. Sandlin, Okl., 392 P.2d 722 (1964).

The judgment of the district court is affirmed.

This Court acknowledges the services of JOHN L. ARRINGTON, Jr., who with the aid and counsel of GEORGE H. BOWEN and J. JERRY DICKMAN, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.