Jean Duncan ARNOLD, Plaintiff in Error,

v.

Mildred HEADLEY, Defendant in Error.

No. 37515.

Supreme Court of Oklahoma.

May 14, 1957.

Raymond A. Trapp, R. L. Stimpert, Blackwell, John Arnold, Chicago, Ill., for plaintiff in error.

George W. Miller, Ponca City, for defendant in error.

JOHNSON, Justice.

Jean Duncan Arnold, hereinafter called protestant, filed this appeal from an order of the district court affirming the order of

the county court and approving the account of Mildred Headley, guardian.

The record discloses that on the 28th day of June, 1951, Mildred Headley, hereinafter called respondent, was appointed guardian of the person and estate of Ella Duncan, a mentally incompetent due to old age. Ella Duncan, hereinafter referred to as the ward, was eighty-seven years of age at the time of the appointment. The inventory and appraisement shows an initial estate of $47,920.84 and income receipts of $4,073.70. This appears to be in addition to certain building and loan stock. During the administration of the estate the sum of $32,823.54 was spent.

Respondent had been a long time personal friend and companion of the ward. After consultation with the county judge, she began drawing the sum of $100 per month as guardian. An order of August 3, 1951, allowed this amount. She drew the amount for the entire period of the guardianship, and this amount was approved in the final account of respondent.

The ward was placed in the hospital at Ponca City soon after the appointment. Before she was placed in the hospital, respondent hired Maude Suits as a nurse and housekeeper. This was after consultation with the county judge. The first month or so Maude Suits was paid $25 per month. Thereafter she was paid $50 per month during the entire guardianship.

The ward was first placed in the hospital in September, 1951, where she remained until November, 1951. She was removed to the home where she stayed until February, 1952, when she was again placed in the hospital where she remained until her death March 28, 1956. At periods she required twenty-four hour nursing service for which additional payments were made. The record is replete with services performed by respondent of a personal nature inherent in the care of the ward.

Protestant raises two propositions which we shall discuss in their order. It is first argued that the trial court erred in determining the amount of $100 per month as the fee for the guardian. Protestant cites In re Bohanon's Guardianship (Dyer v. Ward), 178 Okl. 253, 62 P.2d 497; In re Estate of Talomase (Talomase v. Kelly), 98 Okl. 212, 225 P. 156; and In re Rose's Estate, 80 Cal. 166, 22 P. 86. These cases are not similar to the case we are now considering. The question is not the legality of any prior order. The question is what is a reasonable fee for the guardian under the facts and circumstances of this particular guardianship. 58 O.S.1955 Supp. 884, is in part as follows:

"Every Guardian must be allowed the amount of his reasonable expenses in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable, * * *."

■ In Mason v. Ford, 102 Okl. 257, 226 P. 346, in construing this provision of the statute as then contained in the law of guardianship, the court stated:

"Under section 1463 Comp.St.1921, which provides 'Every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable,' the amount allowed a guardian as compensation is a matter to be left to the sound judicial discretion of the county court, and to the district court on appeal, and an order allowing compensation will not be disturbed by this court, unless there has been an abuse of this judicial discretion."

An examination of the record shows that respondent was circumspect in every move that was taken for the care of her ward; that in every instance where major action was taken she sought the advice and counsel of the county judge. During the proceeding the trial court stated:

"The Court: Well, to say the least, this matter presents a guardianship out

of the ordinary, and the testimony presents to me that these services were rendered for the benefit of the ward far out of the ordinary. The guardian filed regular annual reports. The evidence indicates that the County Court was fully advised of the condition of the estate by the filing of the reports and by other information. It is my opinion that the Statute contemplates in situations such as this that the County Court may make an award of additional compensation, which was done in this case. The final account will be allowed. The matter will be remanded to the County Court for further proceedings accordingly."

 We find this an apt remark on the duties performed by respondent. Upon a review of all of the evidence we find the allowance of the fee for the guardian fair, and that in this respect the finding of the trial court is not clearly against the weight of the evidence.

In a second proposition protestant argues that the allowance of $2,250 for Maude Suits is unauthorized and should be disallowed. Protestant offered no evidence of what she thought a reasonable compensation would be for the services rendered by Maude Suits. On at least two occasions during the hearing, the attorney for protestant stated that the only issue was the amount to be allowed as a fee for the guardian, and near the close of the hearing the court stated that it had been stated and it was his understanding that the only issue presented was the fee to be allowed the guardian.

Despite the two statements by counsel and the statement made by the trial judge, we have given due consideration to all of the evidence introduced relative to the hiring and payment of Maude Suits. The amount represented $50 per month for the period of the guardianship after her hiring in June, except perhaps for one month. Maude Suits was a former nurse. She left her home and moved into the home of the ward. When the ward was at home she had complete care of her during the day. The care was intricate. When the ward was at the hospital, Maude Suits cared for the house, cooked meals for the extra nurses, visited the ward in the hospital, washed her clothes and otherwise attended her at other times.

Protestant argues that since the ward was soon removed to the hospital, the $50 per month fee paid her was not commensurate with the duties thereafter performed. The trial court could readily have determined that $50 per month was not sufficient to pay for the services rendered before the ward was placed in the hospital. The matter was addressed to the discretion of the trial court. We do not find that in allowing the amount paid Maude Suits, the court abused this discretion.

The order of the trial court allowing the account is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.